THE SCHILLING & SCHNEIDER BREWING COMPANY *et al.*, *Appellants*, v. SCHNEIDER, *Executrix, et al.*

Division One, May 23, 1892.

1. **Corporation**: PURCHASE OF STOCK: RIGHTS OF STOCKHOLDERS. Where all the stock of a corporation is owned by three persons, an agreement by which two of them agree to buy the stock owned by the third, to be paid for in part by the proceeds of a note given by the corporation and the remainder by notes of the purchasers, which they agree between themselves shall be paid for out of the earning of the company, is valid.

2. ———: ———: ———. Such sale passed title to the stock to the purchasers in the proportions named in the agreement itself, without regard to their respective holdings of the stock at the time it was made.

3. ———: ———: ———: ESTOPPEL. Payments of the notes out of the earnings of the company cannot be successfully assailed by stockholders who inherit their stock from one of the parties, nor by those who became stockholders after the payments were made, nor by a stockholder who was president of the corporation at the time the payments were made, and who consented to them at the time.

*Appeal from St. Louis City Circuit Court.*—HON. JAS. E. WITHROW, Judge.

AFFIRMED.

*H. A. Hauessler* and *C. V. Scott* for appellants.

(1) The court erred in finding that plaintiff corporation had no interest in or right to the stock in question or proceeds thereof. (2) The court erred in sustaining the contract as between Schilling and Schneider to the effect that the stock in question should be paid for out of the earnings and assets of the plaintiff corporation and become their private property. (3) Directors and officers of corporations occupy positions of trust, and will not be allowed to deal with the corporation's funds and property for their private gain. *Packet Co. v. Davidson*, 95 Mo. 473; *Ward v. Davidson*, 89 Mo. 458; *Bent v. Priest*, 86 Mo. 475. (4) The statute forbids the loan of money, or its credit, by a business corporation to a stockholder therein. R. S. 1889, sec. 2775. (5) Contracts which contravene the provisions and policy of the statute law, or repugnant to the principles of sound policy, are not enforceable in law or equity. 2 Kent's Commentaries, 466; *Tyler v. Larimore*, 19 Mo. App. 456; *State v. Bank*, 45 Mo. 528.

(6)   The court erred in construing said contract to the effect that said stock should be divided between said Schilling and Schneider in equal portions.   (7)   The so-called dividends were mere manipulations by which portions of the surplus and assets of the corporation were, from time to time, transferred from one account to another on its books.   (8)   The officers or directors of a corporation have no control over dividends *bona fide* and legally declared; they immediately become the property of the stockholder, are separated from the assets of the corporation and removed from its control and disposition.   Morawetz on Private Corporations, sec. 445.   (9)   If the dividends were actual and valid then Schilling's stock contributed upwards of five times as much toward the purchase of the Koch stock as Schneider's stock, and the equitable interest between their respective estates was in that proportion.   (10) The court erred in admitting, against plaintiffs' objection, evidence tending to support the immaterial averments of the answer respecting Schneider's former business, and his alleged usefulness in the business of the corporation, and his acts as administrator of Schilling's estate.   (11)   Schneider's acts, as a director of the corporation and as administrator of Schilling, could not prejudice the rights of the corporation or of the distributees of Schilling's estate in respect to said stock in favor of his private or personal interest therein. (12)   No elements of estoppel appear either against plaintiff corporation or plaintiff's distributees of the Schilling stock in respect to said stock.   Neither Schneider nor defendants changed their relation to said stock or said corporation, or parted with any value by reason of any acquiescence on the part, or acts done by Schilling or his legal representative, plaintiffs, or the distributees of his estate.   The elements of estoppel are well settled and defined.   (13)   The court erred in

finding the issues for the defendants. It should have found the issues for the plaintiffs and decreed accordingly. (14) The court erred in overruling plaintiffs' motion for rehearing or new trial, and should have sustained same.

*Rassieur & Schnurmacher* for respondents.

(1) It stands undisputed that the Koch stock was paid for out of the earnings of the company. Now, even as against creditors, the shareholders of a corporation may withdraw from it the profits, or that excess of the assets over the capital stock and liabilities, which represents the profits, by whatever name designated, whether "surplus" or "earnings." To adopt the language of the St. Louis court of appeals: "There can be no doubt that a corporation, after making provision to pay its debts, may distribute its assets among its stockholders." *Heman v. Britton*, 14 Mo. App. 121; Morawetz on Private Corporations, secs. 344, 347, 573, 593. (2) The corporation could not deal in, nor acquire, its own stock. *Mfg. Co. v. Helbert*, 24 Mo. App. 338. Therefore, if Schilling and Schneider held the stock in trust at all it was for the benefit of the stockholders. (3) "Where a court of equity has once acquired jurisdiction, it will retain it for the purpose of doing full, adequate and complete justice between the parties." *Sav. Inst. v. Collonius*, 63 Mo. 290; *Nelson v. Smith*, 21 Mo. App. 219; *Lackland v. Smith*, 5 Mo. App. 93.

BLACK, J.—This is a controversy over two hundred and one shares of stock in the Schilling & Schneider Brewing Company. The real plaintiffs in interest represent the Schilling estate, and the defendants represent the Schneider estate.

The facts are these:

The Koch & Schilling Brewing Company was a corporation under the laws of this state, with a capital stock of $50,000, divided into five hundred shares, all owned by Geo. Schilling, Charles F. Schneider and Mrs. Koch. Schneider was the active business manager and Schilling the brewer. For some reason, not disclosed, Schneider was not elected a director at the stockholders' meeting, held on the twentieth of September, 1882. This fact led to an estrangement for the time being between him and Schilling, and Schneider threatened to sever his connection with the company. To induce him to remain, Schilling proposed a joint purchase of the stock held by Mrs. Koch. On the twenty-third of September, 1882, Mrs. Koch, as party of the first part, and Schilling and Schneider, as parties of the second part, entered into a written contract whereby she sold her two hundred and one shares of stock to them for $25,000, the purchase price to be paid as follows: $10,000 cash, and their four notes each for $3,750, due in one, two, four and five years, with interest. The agreement provides, among other things, that Mrs. Koch "does by these presents assign, transfer and set over unto the said parties of the second part, share and share alike, two hundred and one shares of the capital stock of the Koch & Schilling Brewing Company, of the par value of $100 each. To have and to hold the said shares unto the said parties of the second part forever.

"And it is agreed by and between the said Schilling and Schneider that the said purchase money shall be paid out of the earnings of the Koch & Schilling Brewery Company, and charged to expense account, but this agreement shall in no way be deemed to limit the liability of the said parties of the second part, individually and jointly, for the whole of said liability or debt."

In October, 1882, the name of the corporation was changed to the Schilling & Schneider Brewing Company, and Schneider was then elected director, and made secretary and treasurer. Schilling owned two hundred and fifty-three shares in his own right, and Schneider owned in his own right forty-six shares, and they owned the two hundred and one shares jointly, purchased from Mrs. Koch. Schilling died in December, 1882, and in January, 1883, the administrators of his estate sold twenty-five of the two hundred and fifty-three shares to Anton Reck. To induce Reck to [buy this stock and take an active interest in the affairs of the company, the administrators and Schneider agreed that the twenty-five shares should stand released from the agreement between Schilling and Schneider. Subsequently, and in 1886, the administrators of the Schilling estate sold to Reck twenty-eight and one-half shares. The remaining one hundred and ninety-nine and one-half shares belonging to that estate were turned over to the distributees in 1888. Schneider died in 1887.

It stands admitted that Schilling and Schneider borrowed the $10,000, which they paid to Mrs. Koch in cash on a note executed by the Koch & Schilling Brewing Company, indorsed by them, due at nine months after date. This note and the four given by them to Mrs. Koch, each for $3,750, were all paid by the corporation; that is to say, the corporation paid them from time to time and charged the amount thus paid to Schilling and Schneider. Dividends were then declared annually to an amount which equaled the payments made on the notes with an amount added which would give to Reck a like dividend on his twenty-five shares. The dividends thus divided, except on the Reck shares, were credited to Schilling & Schneider, thus canceling their indebtedness to the company.

These dividends were at all times declared from assets on hand over and above all liabilities of the company. Indeed, there was a large surplus on hand after paying the last note in 1887.

The plaintiffs in this case represent the two hundred and fifty-three shares owned by Schilling individually, Reck having acquired his interest at the times and in the manner before stated. Some of the plaintiffs are distributees of the Schilling estate, and the other plaintiffs are assignees of the other distributees of that estate.

The claim pressed by plaintiffs that the contract between Mrs. Koch and Schilling and Schneider shows on its face that they purchased the two hundred and one shares for the benefit of the corporation cannot be sustained. This contract, it is true, contains a stipulation to the effect that the stock so purchased shall be paid for out of the earnings of the company, but this is plainly a stipulation between Schilling and Schneider, with which Mrs. Koch had no concern whatever; for, besides being in terms an agreement between themselves, the further clause is added that this agreement shall in no way limit their joint and several liability to Mrs. Koch. The purchase was clearly one by them on their own account, and not for or on account of the company. Of all this there can be no doubt.

The further claim that these two hundred and one shares belong to the corporation, because purchased with funds of the corporation, is equally untenable. In saying this we again reassert the rule that officers of a corporation will not be allowed to deal with the funds and property of the corporation for their private gain; but the rule has no application to a case like the one in hand. Schilling and Schneider had a perfect right to buy the stock. After that purchase, they owned all the stock, and it was entirely competent and proper for

them to agree that it should be paid for out of the earnings of the corporation. These earnings belonged to them as stockholders, and became their individual property when set apart as dividends. It is true the notes given for the stock were first paid by the corporation and charged to Schilling and Schneider, and these charges were then canceled by dividends |duly declared; but there was a surplus on hand at all times sufficient to offset such payments. The company simply advanced the money on profits accumulated and ready for distribution, and this, too, as a matter of convenience both to the company and the stockholders. There is and can be no objection to such transaction.

But it is said Schilling and Schneider made use of the credit of the company to raise the money for the payment of $10,000, and so they did. But these plaintiffs are in no condition to complain of that act. Some of them inherited the stock owned by them from Schilling and stand in his shoes, and surely he could not complain of his own act. The assignees from other heirs of Schilling stand in no better position; for they did not acquire their stock until the dividends had been declared and paid. The dividends belonged to the persons who owned the stock when declared and made payable. Morawetz on Private Corporations, sec. 449; 5 American & English Encyclopedia of Law, 731.

Reck, the other plaintiff, was the president of the corporation from the time he purchased the twenty-five shares in January, 1883, and knew of this contract between Schilling and Schneider. It was after that date that the company paid the $10,000 note and the other notes, and charged the same to Schilling and Schneider, and then canceled the charges by a credit of dividends. He knew of and gave his consent to the transaction, and, hence, cannot be heard to complain of them.

The two hundred and one shares must be divided according to the terms of the contract. As Schilling owned two hundred and fifty-three shares individually, and Schneider owned forty-six shares individually, and the two hundred and one shares were, as between themselves, to be paid for out of the earnings of the company, it would seem the stock so purchased should be divided in the proportion of two hundred and fifty-three to forty-six; but the contract says they purchased the Koch shares "share and share alike." This means and can only mean that they were to be equal in ownership. This seeming inequality finds explanation in the fact that Schilling desired the assistance of Schneider in the conduct of the business, and in the further fact that the two parties believed that by their joint efforts they could make the earnings of the company pay for the stock. But be this as it may, the agreement is clear, and we have no right or power to strike out the words, "share and share alike."

The trial court found that the Schneider estate was entitled to half of the two hundred and one shares, and in doing so it but followed the plain meaning of the contract, and the judgment is, therefore, affirmed. BARCLAY, J., absent. The other judges concur.