debt, and the forbearance of Wolfson from collecting it. There is an abundance of evidence to sustain this finding. An agreement to forbear, either absolutely or for a certain time, to enforce a legal or equitable claim, is a sufficient consideration for a promise of the debtor or of a third person to pay the debt. Bank v. Wixson, 42 N. Y. 438, and cases there cited. One of plaintiff's witnesses testified that prior to the making of the instrument. Wolfson indorsed a note for Edward Enoch for $450, which was discounted, and subsequently paid by Wolfson. Another witness testified that he was present when the instrument was signed, and he was then asked:

"Q. Did you hear anything said at that interview about what the note was given for? A. I was sent for for that purpose, as a friendly act to Mr. Wolfson and Mr. Enoch. The note was given for a debt of $450. Q. You say that you were called in to do a friendly act for them? A. Yes, sir. Q. Who told you the amount of $450 was due? A. Mr. Wolfson and Mr. Enoch both. * * * I say there had been some conversation that Mrs. Enoch and Joseph E. Enoch were to execute the note because Edward Enoch owed Wolfson $450."

This testimony was not disputed; neither was the fact of the execution and delivery of the instrument, and its nonpayment.

For the foregoing reasons, I think the judgment should be affirmed.

O'BRIEN, J., concurs.

---

(47 App. Div. 554.)

In re GRAY.

(Supreme Court, Appellate Division, First Department. February 9, 1900.)

BANKRUPTCY—POWERS OF TRUSTEE—REMOVAL OF VOLUNTARY ASSIGNEE.
    Since the national bankruptcy act of 1898 suspends the operation of state laws when the petition in bankruptcy is filed within four months of an assignment under a state law, and vests in the trustee in bankruptcy sole power to avoid any transfers made by the bankrupt in fraud of creditors, an application to remove an assignee under a voluntary assignment, made within four months of a petition in bankruptcy, for failure to maintain actions under the state law to set aside fraudulent transfers by the assignor, will be denied, the trustee in bankruptcy alone having power to avoid such transfers.

Appeal from special term, New York county.

In the matter of the assignment of William H. Gray, etc. From an order of the special term denying the application of Phebe M. Lewis, a creditor of William H. Gray, for the removal of William R. Bishop, as assignee, she appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Ernest T. Fellowes, for appellant.
Louis Marshal, for respondent.

BARRETT, J. There can be no doubt that Bishop should have been removed, if the assignment to him had sufficient vitality to enable a substituted assignee to maintain an action, under chapter 314, Laws 1858, to set aside certain transfers alleged to have been made by the assignee prior to the assignment in fraud of his cred-

itors. Bishop filed neither bond nor schedules, and he did nothing under the assignment save turn over the assets in his hands to a trustee in bankruptcy. It appears that these transfers were made by Gray in the early part of September, 1898. Upon the 3d of the following October, he made the assignment in question, which was nonpreferential, for the benefit of creditors, to Bishop. Upon the 19th day of January, 1899, a petition was filed in the proper federal court to have Gray declared a bankrupt, and on the 18th day of the following February he was therein adjudicated a bankrupt. The question presented by this appeal is as to the effect of the bankruptcy proceedings upon the assignment. It is clear that the assignment, made, as it was, within the four months which preceded the filing of the petition, was an act of bankruptcy. The bankruptcy act of July 1, 1898, expressly so provides (section 3a, subd. 4). It is well settled in the federal courts that the act suspends the operation of state insolvent laws when the petition is so filed within four months after the making of the assignment, under the state law. In re Bruss-Ritter Co. (D. C.) 90 Fed. 651; In re Sievers (D. C.) 91 Fed. 366; Davis v. Bohle, 34 C. C. A. 372, 92 Fed. 325; In re Smith (D. C.) 92 Fed. 135; In re John A. Etheridge Furniture Co., Id. 329. It has also been held that such a voluntary assignment, though general and nonpreferential, if made within four months prior to the filing of the petition, is a constructive fraud upon the bankruptcy act, in that it interferes with the control of the assignor's estate by the court in bankruptcy, and prevents the due operation of the bankruptcy system. In re Gutwillig (D. C.) 90 Fed. 475, approved by the supreme court of the United States in West Co. v. Lea, 174 U. S. 590, 19 Sup. Ct. 836, 43 L. Ed. 1098; same case on appeal, 34 C. C. A. 377, 92 Fed. 337. It is provided in section 67e of the act that all conveyances, transfers, and assignments of his property, made within the four months, by a person so adjudged bankrupt, with the intent to hinder, delay, or defraud his creditors, shall be null and void, as against such creditors, except as to purchasers in good faith and for a present fair consideration; and that the property so conveyed, transferred, or assigned shall be and remain a part of the assets and estate of the bankrupt, and shall pass to his trustee, whose duty it shall be to recover the same, by legal proceedings or otherwise, for the benefit of the creditors. This section embraces all acts, however innocent in themselves, which are frauds upon the bankruptcy act; and consequently Gray's general assignment, though, as matter of fact, untainted with a fraudulent purpose, was yet, as matter of law, made with intent to hinder, delay, and defraud the assignor's creditors, within the meaning and purpose of the act. Section 67e undoubtedly covers as well transfers which are fraudulent as matter of fact, if made within the four months. It is apparent, however, that this section does not embrace fraudulent transfers which, like those under consideration, antedate the four months. To reach such fraudulent transfers, section 70e seems to be specially adapted. That provides that "the trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided and may

recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication." It will be observed that there is here no four months' limitation, and it is plain that that limitation which runs through the act, in connection with frauds upon the system, was at this point advisedly omitted. The purpose of the two sections is quite apparent. One covers frauds upon the act, whether actual or constructive, committed within the four months; the other actual or common-law frauds exclusively, committed at any time. When the trustee seeks to annul the former, he does so in the right which the due operation of the act confers upon him. That right is given by section 67e, fortified by the title conferred upon him in terms by section 70a, subd. 4. And he may exercise that right, though the nature of the transfer be such that, but for the act, no one nor all of the creditors could avoid it. When, however, the trustee seeks to avoid a fraudulent or any avoidable transfer by the bankrupt antedating the four months, he does so, not in the right conferred as a concomitant to the due operation of the system, but exclusively in the creditors' common-law right. He is, with relation to these anterior transfers, so to speak, subrogated to that right. Such of these anterior transfers as any creditor might have avoided, he may avoid; such as no creditor could have avoided, he cannot avoid.

This construction lends harmony to the working of the system, while the opposite view tends to confusion. It certainly never was intended to have part of a bankrupt's estate administered and distributed by the trustee in bankruptcy, and another part recovered and distributed by the assignee in a voluntary assignment. Whether property fraudulently transferred, or its proceeds or value, be recovered by the trustee or by the assignee, the effect upon their distribution is the same. In either case the avails must be distributed equally among the creditors. It is, in effect, so provided in the state act of 1858, as well as in the bankruptcy act. It would be an anomaly to permit the assignee to sue for and reclaim this fraudulently transferred property for distribution by him after the trustee had, for the purpose of a like distribution, wrested from him the general assets of the bankrupt. The assignment is suspended pending action in the bankruptcy court upon the petition. When, however, the petition has been followed by an adjudication, the assignment is superseded, and the assignee is thereupon required to turn over all the property in his hands to the trustee. The rights of action in question follow the supersession, and go to the trustee, with the rest of the estate, and thereafter he is exclusively vested therewith, for the purposes of the act.

Nor was it intended to leave avoidable transfers antedating the four months to the operation of ordinary creditors' bills. No individual creditor is permitted by the bankruptcy act to proceed upon his judgment against the bankrupt. Should he attempt to file a creditors' bill thereon, he would at once be stayed by the bankruptcy court. Section 70e, therefore, means what we have indicated, or else the bankruptcy act operates as a legislative device to permit

fraudulent transfers to take effect with impunity in case they are successfully concealed for the specified four months. And this certainly cannot be inferred. We think, therefore, that the trustee may avoid the transfers here alleged to be fraudulent, and that the right to maintain an appropriate action to recover the property so transferred, or its value, is vested in him, and in him alone.

The order appealed from was right, and should be affirmed, with costs. All concur.