[Civ. No. 2753. First Appellate District, Division Two.—June 25, 1919.]

H. H. SCALES, as Trustee, etc., Respondent, v. ELIZABETH M. HOLJE, as Executrix, etc., Appellant.

[1] BANKRUPTCY—RIGHT OF TRUSTEE TO AVOID FRAUDULENT TRANSFERS.—When a trustee in bankruptcy seeks to avoid a fraudulent or any voidable transfer by the bankrupt antedating the period four months preceding an adjudication of bankruptcy, he does so, not in the right conferred as a concomitant to the due operation of the system, but exclusively in the creditor's common-law

1. Right of creditor of bankrupt to set aside transfer in fraud of creditors, notes, 11 Ann. Cas. 932; 10 L. R. A. (N. S.) 305.

right. He is, with relation to these anterior transfers, subrogated to that right, and may avoid only such transfers as any creditor might have avoided.

[2] ID.—ISSUANCE OF CHECKS BY BANKRUPT—ACTION TO RECOVER AMOUNT—FRAUDULENT CONSPIRACY—INSUFFICIENCY OF EVIDENCE AND FINDINGS.—In this action by the trustee of a bankrupt corporation to recover the aggregate amount of certain checks drawn by the president of the corporation, as such official, more than four months prior to the adjudication in bankruptcy, in payment of his personal indebtedness, there being no evidence or finding regarding a fraudulent conspiracy, and no finding as to fraud upon the part of the president of the corporation or his creditor, of insolvency of the corporation, or of contemplated insolvency at the time when the checks, or any of them, were issued, or that there were existing creditors at the times of the payments, the judgment in favor of the plaintiff is without support.

[3] CORPORATIONS—DISPOSITION OF ASSETS BY SOLE OWNER—WHO MAY COMPLAIN.—The sole owner of a "one man corporation" may do what he will with the assets and credits of the corporation, and no one may complain who is not a creditor of the corporation at the time of the transaction of which complaint is made. The assets of a corporation are not held in trust for the benefit of its creditors in any such sense as to entitle a creditor to attack as fraudulent a voluntary conveyance made by the corporation before he became a creditor.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Reversed.

The facts are stated in the opinion of the court.

James S. Spilman for Appellant.

Wm. H. H. Hart and T. John Butler for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment for the plaintiff for $13,053.63. Plaintiff sues as trustee in bankruptcy of the R. B. Moore Mill and Lumber Company to recover the aggregate amount of forty-two checks drawn by R. B. Moore as president of the Moore Mill and Lumber Company and given by him to Martin Holje, defendant's testator, in payment of a personal indebtedness of Moore to Holje. The complaint is in two counts, one count for money had and received, and the

other to recover the same funds as having been paid out
of the corporation's treasury in fraud of creditors while
it was insolvent and as the result of a conspiracy between
Moore and Holje. The facts of the case are briefly: In
November, 1906, Moore Mill and Lumber Company was
organized with a capital stock of one hundred thousand
dollars, divided into one thousand shares of one hundred
dollars each. Three hundred thirty-three and one-third
shares each were issued to Moore and Holje. At no time
during the life of the corporation were there any other
stockholders except "dummy" directors holding one share
each for which they paid no consideration. On February
9, 1909, Moore individually purchased at par from Holje
all of the shares owned by Holje, and for said shares Moore
gave Holje his promissory note for $33,333.33, secured by
a pledge of shares then purchased by Moore. Thereafter,
Moore made payments on account of interest on said note
by checks drawn on an account in the name of Moore Mill
and Lumber Company. The first of these checks was dated
April 29, 1909, and the last was dated October 1, 1913.
The principal of the note given by Moore to Holje has
never been paid in whole or in part. Holje died on Jan-
uary 16, 1914, and Moore died in the spring of 1914. In
June, 1914, Moore Mill and Lumber Company was adjudi-
cated a bankrupt and the plaintiff was appointed trustee
in bankruptcy. In October, 1914, plaintiff, as trustee, pre-
sented to defendant a creditor's claim for the amount of
the checks that had been paid to Holje. The claim was
rejected by the executrix and this action was brought.

[1] The plaintiff as trustee in bankruptcy is in no better
legal position than the creditors whom he represents. There
is no claim made that any of the money was paid to Holje
within four months of the bankruptcy. "When the trustee
seeks to avoid a fraudulent or any avoidable transfer by
the bankrupt antedating the four months, he does so, not
in the right conferred as a concomitant to the due opera-
tion of the system, but exclusively in the creditors' common-
law right. He is, with relation to these anterior transfers,
so to speak, subrogated to that right. Such of these anterior
transfers as any creditor might have avoided, he may avoid.
Such as no creditor could have avoided, he cannot avoid."
(*In re Gray*, 47 App. Div. 554, [62 N. Y. Supp. 618, 3 Am.

Bankr. Rep. 647].)   The Bankruptcy Act, as amended in
1910 (Act Cong. July 1, 1898, c. 541, sec. 47a, 30 Stat. 557,
as amended by Act Congress, June 25, 1910, c. 412, sec. 8,
36 Stat. 840, [U. S. Comp. Stats., sec. 9631, 1 Fed. Stats.
Ann., 2d ed., 933]), provides that as to all property not in
the custody of the bankruptcy court, the trustee in bank-
ruptcy shall be deemed vested with all the rights, remedies,
and powers of a judgment creditor holding an execution
duly returned unsatisfied.   The time at which the trustee
assumes such status is the date of the filing of the petition
in bankruptcy—in this case June 11, 1914.   (*Bailey* v.
*Baker Ice Machine Co.*, 239 U. S. 268, [60 L. Ed. 275, 36
Sup. Ct. Rep. 50, see, also, Rose's U. S. Notes].)   The rights
incident to such status are to be tested by the law of this
state.   (*In re Mullen*, 101 Fed. 413.)   The law of this state
is that "in the absence of fraud every contract of a debtor
is valid against all his creditors existing or subsequent who
have not acquired a lien on the property affected by such
contract."   (Civ. Code, sec. 3431.)   Section 3439 of the
Civil Code provides that "every transfer of property . . .
*with intent to delay or defraud any creditor* or other per-
son . . . is void against all creditors of the debtor. . . . "
Section 3442 of the Civil Code provides that "nor can
any transfer or charge be adjudged fraudulent solely on
the ground that it was not made for a valuable considera-
tion; provided, however, that any transfer or encumbrance
of property made or given voluntarily . . . by a party
*while insolvent or in contemplation of insolvency,* shall be
fraudulent, and void as to *existing creditors.*"   By the
second count of his complaint, the plaintiff seeks to state a
cause of action under these two last-mentioned sections of
the code.   He alleges a fraudulent conspiracy upon the
part of Moore and Holje to defraud creditors of the corpo-
ration, and also alleges that the corporation was insolvent
at the times the payments were made.   But there is no
evidence or finding regarding a fraudulent conspiracy, and
no finding as to fraud upon the part of Moore or Holje,
nor of insolvency of the corporation, nor of contemplated
insolvency at the time when the checks, or any of them,
were issued, nor that there were existing creditors at the
times of the payments.   [2]   There is a failure of proof

of sufficient facts to support the second count of the complaint.

The judgment must be supported, then, if at all, upon the count for money had and received for the use of the corporation upon the theory that the payment of the personal indebtedness of Moore was an improper application of corporate funds. It appears from the admitted facts that there were no stockholders except Moore interested in the corporation during the period when the checks were issued. **[3]** It was what has been called a "one man corporation." It has been repeatedly held that in such a case, the sole owner may do what he will with the assets and credit of ¡the corporation and no one but creditors may complain. (*First Nat. Bank* v. *Winchester,* 119 Ala. 168, [72 Am. St. Rep. 904, 24 South. 351]; *Schilling & Schneider Brewing Co.* v. *Schneider,* 110 Mo. 83, [19 S. W. 67].) The matter has been considered by our own supreme court in the case of *Sargent* v. *Palace Cafe Co.,* 175 Cal. 737, [167 Pac. 146], which holds that a corporation may execute its note for the personal indebtedness of its sole stockholder, and no one but the creditors of the corporation may complain. And this brings us to a consideration of the question of what creditors of a corporation may complain. We think that only such creditors may complain as were creditors of the corporation at the time of the transaction of which complaint is made. It is said, in Clark and Marshall on Private Corporations, volume 3, section 777c, that it is a well-settled rule of law that if an individual without any intent to defraud creditors, disposes of his property for an adequate consideration, or without any consideration at all, subsequent creditors cannot reach the property. They are not injured, for they have given credit to the debtor in the status which he had after the conveyance was made. This rule applies to creditors of a corporation, as well as to creditors of a natural person. The assets of a corporation are not held in trust for the benefit of its creditors in any such sense as to entitle a creditor to attack as fraudulent a voluntary conveyance made by the corporation before he became a creditor. (*Graham* v. *La Crosse etc. R. R. Co.,* 102 U. S. 148, 153, [26 L. Ed. 106, see, also, Rose's U. S. Notes].)

There is no evidence in the record that there were any creditors of the corporation at the various times that these

checks were given. There is no finding directly upon this point. The court did find that "the creditors of R. B. Moore Mill and Lumber Company were not given notice of the said transaction of February 9th, 1909, and had no knowledge of the execution of said promissory note . . . " The only evidence to sustain this is the evidence of former office employees of the corporation who testified that so far as they knew no notice was given to creditors of the transactions complained of. There is no evidence whatever as to who the creditors were at that time, or of the amount of their claims, or, in fact, that there were any creditors at all. The only pretense of evidence upon the subject is the implication in the testimony of the office employees to the effect that there were some creditors of the corporation who might have been notified. There is nothing whatever in the testimony to indicate that the creditors at the time the checks were issued, if any there were, are the same creditors represented by the trustee. The mere general implication in the testimony and the findings that there were some creditors at the time the note was executed and the checks issued is not sufficient, for as such creditors could only recover the amount they had been injured, i. e., the amount of their respective claims, and as only such creditors could recover as were creditors at the time of the payments to Holje, specific findings upon these various matters are necessary to a proper judgment. Each payment to Holje was a separate and distinct transaction; only such creditors as were injured by the individual transactions may recover upon the theory of the case relied upon in the first count of the complaint.

As it is impossible for us to determine at this time which theory of the case plaintiff will attempt to sustain in the event of a retrial, we cannot determine the questions discussed as to which statute of limitation would be applicable and the admissibility of the counterclaim.

The judgment is reversed.

Haven, J., and Brittain, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 21, 1919.

All the Justices concurred.