MAROTTA v. AMERICAN SURETY CO. OF NEW YORK.
No. 2647.

Circuit Court of Appeals, First Circuit.
April 4, 1932.

MORTON, Circuit Judge, dissenting.

George I. Cohen, of Boston, Mass., for appellant.

Harry LeBaron Sampson, of Boston, Mass., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from a decree of the District Court of Massachusetts adjudicating the appellant a bankrupt on June 24, 1931. The petition in bankruptcy was filed by the appellee as a single creditor, and sets forth that there were less than twelve creditors.

The petition alleges that the petitioner was a creditor to the amount of $7,023.78, and that within four months of the filing of the petition the alleged bankrupt conveyed to one Muollo two parcels of real estate; that each conveyance was without consideration and was made by the alleged bankrupt with the fraudulent intent and purpose of putting said real estate beyond the reach of her creditors, including the petitioner.

The petitioner in the petition offered to surrender, upon adjudication, for the benefit of the estate in bankruptcy, any liens it had acquired by an equitable attachment of the above-described real estate alleged to be so fraudulently conveyed.

The alleged bankrupt filed an answer denying that she is insolvent, or that she committed the act of bankruptcy alleged in the petition, or that the petitioner is a creditor or has a provable claim against her. The matter was then referred to a master.

Some time prior to 1927, the husband of the alleged bankrupt purchased two parcels of land in Boston and the house where he now lives in Winthrop. While the deeds of the several parcels were paid for by the husband, the deeds were all taken in the name of the wife, but the husband always had attended to the management of the several parcels and collected the rents.

In April, 1927, one Natale, an employee of Mario Mogliani, whose place of business was in Providence, Rhode Island, went to Arcangelo Marotta, husband of the appellant, to seek assistance in obtaining a surety bond. A part of the business of Mogliani was conducting public exhibitions of fireworks. Before giving any such exhibitions in Massachusetts, an exhibitor is required by statute (c. 148, §§ 57C and 57D, G. L. Mass. as added by St. 1921, c. 500) to file a bond with sufficient sureties with the state treasurer to answer for any damage to person or property resulting therefrom. While there was some dispute as to what was said by Natale to the Marottas as to the nature of the instrument to be signed, the husband told Natale that he could not sign a bond, as the property was in his wife's name. As a result of the conference, Natale and Mr. and Mrs. Marotta went to the office of a lawyer, where Mrs. Marotta, the alleged bankrupt, signed an application for a surety bond, commonly referred to as a "Fireworks Bond," to be executed by Mogliani as principal and the appellee as surety, and running to the treasurer of the commonwealth of Massachusetts, and conditioned to protect persons and property from any loss or damage resulting from a public exhibition of fireworks.

In the application for the bond, which was at some time also signed by Mogliani,

the applicants were described as indemnitors, and each agreed to hold the appellee harmless in case it was called on as surety to make good any loss or damage to person or property resulting from any exhibition of fireworks given by Mogliani in Massachusetts.

This instrument of indemnity was under seal and was executed at the office of the lawyer without the knowledge of the appellee, as neither Natale nor the lawyer in any way represented the appellee. In consideration of Mrs. Marotta assuming the obligation of an indemnitor under this instrument, Mogliani paid to her or her husband the sum of $800.

At the time of signing this application, Mrs. Marotta, in the presence of her husband, also signed a statement as to her property, and set forth therein that she had an equity in three parcels of real estate of the value of approximately $60,000 and cash to the amount of $8,000. The appellee relied on this statement as true in signing as surety on the bond for Mogliani.

Afterward Mario Mogliani, as principal, signed an instrument purporting to be a bond, but to which he failed to affix his seal, in the penal sum of $15,000, which the appellee signed as surety under its seal. This instrument was delivered to the state treasurer of Massachusetts, and a certificate that a bond was filed as required by law was issued to the state fire marshal and to Mogliani prior to September 26, 1927. While giving a public exhibition of fireworks in the city of Everett on September 26, 1927, one Beatrice Ricci was seriously injured, and claim was made against Mogliani, and the appellee was notified as surety on the bond.

The alleged bankrupt was also notified of the claim and that she was liable on the contract of indemnity contained in the application which she signed. On April 12, 1928, an action was brought against Mogliani by Beatrice Ricci, and Arcangelo Marotta and his wife were also notified of this action. The husband, who, in all matters connected with this case, acted for his wife, consulted counsel, and was notified by counsel for Mogliani that it was a serious matter, and that the appellant might be called on to pay heavy damages under her agreement of indemnity, and suggested it might be better to settle, but Marotta refused, and suggested that the counsel for Mogliani go ahead and try the case.

In February, 1930, the case went to trial, and on March 4, 1930, a verdict against Mogliani was returned for $10,000. Marotta again consulted his counsel, who went to Providence, R. I., where Mogliani's place of business was, and after investigation advised Marotta and the counsel acting for Mogliani that a motion for a reduction of the verdict should be made in the case. On March 5, 1930, a motion for a new trial was filed, on the ground that the damages awarded were excessive. On March 30, 1930, the motion was granted, unless a remittitur was filed, which was done, and the damages were reduced to $6,540.68, with costs taxed at $110.40. On April 10, 1930, judgment was entered for this amount and an execution issued on which demand was made upon Mogliani, who was unable to pay.

Following the verdict against Mogliani on March 4, 1930, Arcangelo Marotta went to another lawyer, who knew nothing of the signing of the instrument by which his wife had become an indemnitor of the appellee, or of the verdict against Mogliani; and after some talk about protecting him or his children, Marotta said he wanted a deed made out from his wife to him of certain property which he had bought some time before and had taken the deeds in her name. On March 18, 1930, a quitclaim deed was executed by the alleged bankrupt and her husband of the two parcels of land referred to and delivered to one Pellegrino Muollo, who afterwards executed two mortgages, one on the Winthrop property and one on the property located on Lewis street in the city of Boston. The equity in these parcels was then transferred by Muollo to Arcangelo Marotta in trust for his children. It is not claimed that any consideration passed between Muollo and the Marottas in these transactions.

On April 18, 1930, an action in the name of the state treasurer was brought on the judgment against the appellee for the benefit of the injured woman. The appellee then paid the amount of the judgment against Mogliani, and judgment against the appellee was entered on April 30, 1930.

The appellee in April, 1930, instituted two suits in equity against the appellant, seeking to set aside the conveyances made by the appellant on March 18, 1930, as being fraudulent as to the appellee. On the second suit in equity the property so conveyed on March 18, 1930, was attached and an injunction issued enjoining any further conveyances or encumbering it. On July 18, 1930, the petition in bankruptcy was filed. At the time of filing the petition, and on March 18, 1930, when the alleged fraudulent

conveyances were made, the appellee, if a creditor, was the only creditor of the alleged bankrupt.

The above facts were either found by the master and District Court, or are undisputed.

The appellant's assignments of errors, twenty-eight in number, raise in brief the following issues: (1) Whether the appellant was induced to sign the contract of indemnity by fraud; (2) whether she was bound by the contract of indemnity because the bond, when given, did not have attached the seal of the principal; (3) whether the bond ·was ever delivered to the state treasurer at the state house in Boston prior to the exhibition on September 26, 1927, at which the Ricci girl was injured; (4) whether the appellee was a creditor of the appellant on March 18, 1930, and, if so, whether the conveyances made by the appellant on that date were made to hinder, delay, or defraud the appellee; (5) and if the appellee was not a creditor of the alleged bankrupt on March 18, 1930, whether the appellee could alone file an involuntary petition in bankruptcy against the appellant, even if, at the time of filing the petition, it had a provable claim; (6) and whether, having begun an action in the state courts seeking to set aside the conveyances alleged to be fraudulent, the appellee should in equity be left to its remedy in the state court.

Of these issues we need consider only the fourth and fifth, which, in effect, are: That the conveyances on March 18, 1930, did not constitute an act of bankruptcy as defined in section 3 of the Bankruptcy 'Act (11 USCA § 21), since the appellee was not a creditor as defined in section 1 (9) of the act, 11 USCA § 1 (9) at the time of these transfers; and if the petitioner at the time of the alleged act of bankruptcy was not a creditor as defined in the act, it alone could not file an involuntary petition in bankruptcy, even though it had a provable claim at the time of filing the petition.

Section 3a of the Bankruptcy Act, in defining acts of bankruptcy, provides that it shall consist of a person "having (1) conveyed, transferred, concealed, or removed * * * any part of his property with intent to hinder, delay or defraud his creditors, or any one of them"; and section 1 (9) of the act provides that, as used in the act, the word " 'Creditor' shall include anyone who owns a demand or claim provable in bankruptcy."

The petition in bankruptcy in this case alleges, as the only act of bankruptcy, that the conveyances by Marotta and his wife on March 18, 1930, were made with the intent to hinder, delay, and defraud the petitioner; but the alleged bankrupt in her answer and her counsel in argument deny that the petitioner was a creditor having a claim provable in bankruptcy at that time; and contend that in order for a fraudulent transfer to constitute an act of bankruptcy, the creditor hindered, delayed, or defrauded must be a creditor with a provable claim at the time.

Counsel for petitioner, however, contends that this is not necessary; that it is sufficient if the petitioner has a provable claim at the time of filing the petition, and cites In re Van Horn (C. C. A.) 246 F. 822. The case cited is not in point, since it appears in that case that there were creditors with provable claims at the time the alleged act of bankruptcy was committed; and an act of bankruptcy having been committed, any creditor having a provable claim at the time of filing of the petition in bankruptcy is entitled to share in the distribution of the assets and may join in the petition, though he had no provable claim at the time the act of bankruptcy was committed, which is all that the Van Horn Case holds.

We think the contention of the appellant, that a fraudulent transfer to constitute an act of bankruptcy must hinder, delay, or defraud a creditor or creditors holding a claim or claims provable in bankruptcy at the time the act is committed, must be sustained. Without an act of bankruptcy an involuntary petition cannot be maintained under section 3b of the act.

Was the claim of the petitioner against the appellant a provable claim on March 18, 1930?

A transfer made with an intent to defraud a contingent creditor, or even subsequent creditors, may be set aside in the state courts, or by a trustee in bankruptcy under section 70e, 11 USCA § 110 (e); Collier on Bankruptcy (13th Ed.) p. 1770; Thomson v. Crane (C. C.) 73 F. 327; Kautz v. Sheridan, 118 Me. 28, 105a, 401; Holbrook v. International Trust Co., 220 Mass. 150, 107 N. E. 665; Mowry v. Reed, 187 Mass. 174, 72 N. E. 936; but under the Bankruptcy Act of 1898 contingent claims are not provable in bankruptcy, though unliquidated claims may be, if the liability is fixed by contract. Section 63b of the Bankruptcy Act, 11 USCA § 103 (b); Collier on Bankruptcy (13th Ed.) p. 1419; In re American Vacuum Cleaner Co. (D. C.) 192 F. 939; In re In-

man & Co. (D. C.) 171 F. 185; In re Brinckmann (D. C.) 103 F. 65.

A claim arising out of a tort—the action against Mogliani was based on negligence—is contingent and is not provable in bankruptcy until reduced to a judgment. In re Brinckmann, supra; Beers v. Hanlin (D. C.) 99 F. 695. A verdict alone does not result in that "fixed liability," defined in section 63 (11 USCA § 103), as necessary to constitute a provable claim: Collier on Bankruptcy (13th Ed.) p. 1387; Black v. McClelland, Fed. Cas. No. 1462; In re Ostrom (D. C.) 185 F. 988; since a verdict is not conclusive. A motion to set aside a verdict, though based on excessive damages alone, may be granted unless a remittitur is filed, and this cannot be determined until action is had thereon by the court and plaintiff.

While the relations between the petitioner and the alleged bankrupt in this case were contractual, the petitioner's rights and the appellant's obligations under the contract of indemnity were both contingent, until the judgment was entered against Mogliani on April 10, 1930. The alleged fraudulent transfers having been made on March 18, 1930, at which time the petitioner did not have a provable claim against the alleged bankrupt, no act of bankruptcy was committed thereby within the definition of section 3a (1) of the act, since no creditor, as defined in section 1 (9), was thereby hindered, delayed, or defrauded.

No act of bankruptcy having been committed, the petition must be dismissed and the petitioner left to its remedy under the state laws.

The decree of the District Court is reversed, with costs, and the case is remanded to that court with instructions to dismiss the petition.

MORTON, Circuit Judge (dissenting).

The majority opinion dismisses the petition on the ground that the fraudulent conveyance relied on as the act of bankruptcy did not have that effect, because at the date of it the petitioning creditor's claim had not yet become provable in bankruptcy. The conveyance in question was a voluntary one, and was made with the express purpose of defeating this claim—an intentional, carefully prepared fraud. It is not disputed that the claim became provable before the petition was filed.

Conveyances in fraud of creditors have been recognized and invalidated by our law for some hundreds of years. They always involve two essential elements: (1) The transfer with the fraudulent intent; (2) a creditor who was thereby defrauded. What constitutes a person a "creditor" with the right to attack such a conveyance has been settled by many decisions. There is no doubt that this petitioner was such a creditor. Smith v. Vodges, 92 U. S. 183, 23 L. Ed. 481; McLaughlin v. Bank, 7 How. 220, 12 L. Ed. 675; Yardley v. Torr (C. C.) 67 F. 857; Thomson v. Crane (C. C.) 73 F. 327.

My brethren hold that the fraudulent conveyance which is made an act of bankruptcy by section 3 is not the classic fraudulent conveyance of the Statute of Elizabeth and our common law, but something different and narrower, viz., a conveyance by which creditors having claims provable under the Bankruptcy Act were hindered, delayed or defrauded. I am unable to accept this view. I think that the Bankruptcy Act adopted the fraudulent conveyance as known in our law and made it an act of bankruptcy, and that the word "creditor" in that connection takes its meaning from the old law and not from the defining section of the new statute in which it was used.

This conclusion is, I think, authoritatively approved in Coder v. Arts, 213 U. S. at page 242, 29 S. Ct. 436, 444, 53 L. Ed. 772, 16 Ann. Cas. 1008, where the court said: "We are of opinion that Congress, in enacting section 67e [11 USCA § 107 (e)] and using the terms 'to hinder, delay, or defraud creditors,' intended to adopt them in their well-known meaning as being aimed at conveyances intended to defraud. In section 60 [11 USCA § 96] merely preferential transfers are defined, and the terms on which they may be set aside are provided; in section 67e, transfers fraudulent under the well-recognized principles of the common law and the statute of Elizabeth are invalidated. The same terms are used in section 3 [a], subdivision 1 [11 USCA § 21 (a) (1)], in which it is made an act of bankruptcy to transfer property with intent to hinder, delay, or defraud creditors." Day, J. The opinion then quotes with approval, "The language of subsection 1, of section 3, is the familiar language of the statutes against conveyances fraudulent as against creditors, and we think there can be no doubt that Congress intended the words employed should have the same construction and effect as have for a long period of time been attributed to those words." Severens, J., Lansing Boiler Wks. v. Ryerson, 128 F. 701 (C. C. A. 6).

834

Preferential transfers stand, of course, on an entirely different footing. The invalidity of them is created only by the Bankruptcy Act; and the term "creditor" in that connection has the meaning defined in the act. Richardson v. Shaw, 209 U. S. 365, 381, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981. See too Scales v. Holje, 41 Cal. App. 733, 183 P. 308.

In view of Williams v. U. S. F. & G. Co., 236 U. S. 549, 35 S. Ct. 289, 59 L. Ed. 713 (which, like the present case, involved an agreement by the bankrupt to idemnify a surety), I incline to think that the petitioner's claim was provable in bankruptcy at the date of the fraudulent conveyance; but it is unnecessary to express a definite opinion on this difficult question. See too Thomson v. Crane, supra.