# HENRY W. MATTHEWS

## *vs.*

# HEADLEY CHOCOLATE COMPANY.

*Corporations: minority stockholders; rights of—; excessive salaries; jurisdiction of court.*

The directors and officers of a corporation, while owning or controlling a large majority of the stock, allowed the President and the one, who was the Vice-President, Secretary and Treasurer of the company, salaries that were claimed to be excessive, and one year's extra compensation. One of the officers, who was also a director, afterwards sold a majority of the stock, and a bill in equity was filed in the name of the corporation against the former officers and directors to recover the alleged excessive and unauthorized payments. On appeal from an order overruling a demurrer to the bill, the order was sustained, and it was: *Held,* that the bill could be maintained in the name of the corporation for the benefit of minority stockholders not barred by limitations, laches, acquiescence or in other manner; but relief could be granted only to the extent of the proportions of such excessive and unauthorized payments, if any, due such minority stockholders.                    pp. 537-538

In general, a corporation may proceed in equity to obtain redress for the illegal, fraudulent, *ultra vires* or grossly negligent acts of its directors and officers.                    p. 528

But ordinarily a purchaser of stock can not complain of the prior acts and management of the corporation.          p. 532

A purchaser of stocks acquires no greater rights than his vendor; he holds by the same title and subject to the same liability.                                                   p. 533

The purchaser or transferee of stock can not maintain a shareholder's bill on account of any transaction in which the transferer has acquiesced.                              p. 534

The allowance of excessive salaries by directors of a corporation, who are owners of, or controlled by the owners of, the majority of the stock, may entitle minority stockholders to relief; but, in general, courts can not substitute their judgment for that of the directors, where the latter have acted in good faith, within their powers, and the salaries paid by them are not clearly excessive.                                       p. 535

In proceedings to have salaries paid by the directors declared void on the ground that they were excessive, the corporation is primarily the party to bring suit.                      p. 536

But when the corporation is under the control of the very parties against whom the complaint is made, and they will not act, or, if they would act, could not be relied on to do justice to the other stockholders, then the latter are permitted to sue in their own names.                                      p. 536

In such a suit any defense that could have been made against the minority stockholders, if they had brought suit in their own name, should be allowed, notwithstanding the fact that the suit is brought in the name of the corporation.              p. 537

When those who hold a majority of the stock of a corporation, as directors, voted and paid certain salaries that were complained of as being excessive, they can not obtain redress in equity as stockholders against their own act done in their official capacity.                                           p. 535

*Decided March 13th, 1917.*

Appeal from the Circuit Court No. 2 of Baltimore City. (Bond, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Randolph Barton, Jr.,* and *John Philip Hill* (with whom were *F. J. Kintner* and *Forrest Bramble* on the brief), for the appellants.

*Jacob M. Moses* and *Vernon Cook,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

A bill in equity was filed in the name of the Headley Chocolate Company against its former directors, and, demurrers to that bill having been sustained, an amended bill was filed. One of the seven directors (Frank O. Headley) was president, and another (Henry W. Matthews) was vice-president, treasurer and secretary of the company. Henry W. Matthews, C. Jacob Youse, Thomas E. Fluharty and Henry C. Suchting, being residents of the State, were served with process, and the other three, Charles E. Matthews, George W. Kurtz and Frank O. Headley, being non-residents, were not summoned. Each of the four who were summoned filed a demurrer to the amended bill, and the demurrers being overruled appeals were taken by each, but they were argued together and were properly treated as one appeal.

The corporation was organized in this State in 1900, and is engaged in manufacturing, selling and otherwise dealing in high grade chocolates, candies and similar products. The capital was originally $20,000, but several amendments were made and in 1902 it was increased to $100,000, consisting of 300 shares of preferred and 700 of common stock. The preferred stock carries a guaranteed dividend of ten per cent. per annum, but has no voting power. The amended bill al-

leges that some time prior to the year 1908 Henry W. Matthews and Frank O. Headley owned and controlled a majority of the common stock, and that at a meeting of the stockholders, held January 14th, 1908, they, operating together, determined not to re-elect the old board of directors, but to elect a board "composed of themselves and the other defendants hereinbefore mentioned, all of whom were known to be subservient to the wishes of the defendants, Henry W. Matthews and Frank O. Headley, and known to be persons who would not oppose the plan which the defendants, Henry W. Matthews and Frank O. Headley, then had in mind of voting to themselves excessive salaries and compensation, the amount of which will be hereafter more fully set forth." It is then alleged that Charles E. Matthews, who is a brother of Henry W., owns six shares, that George W. Kurtz, who is the father-in-law of Headly, owned seven shares, that Youse, who owned twelve, Fluharty, who owned three, and Suching, who owned seven shares, were engaged in businesses therein set out, and that the continuance of their business relations with the company depended upon the will of Henry W. Matthews and Frank O. Headley, who controlled the buying of supplies; that an inventory recently taken of the assets of the corporation shows that it had on hand boxes and labels purchased from those three defendants to the extent of $40,000, very largely in excess of any need of the company; that the excessive purchases were made in most cases at prices in excess of the fair market price, and were made by Matthews and Headley with the fraudulent purpose of inducing Youse, Fluharty and Suchting to become parties to the fraud, and that they actually aided and co-operated with Matthews and Headley to perpetrate and accomplish the said frauds.

It is alleged that just prior to the election in 1908, Henry W. Matthews and Frank O. Headley were in receipt of a salary of $6,000 per annum, and the first act of the board was to increase Headley's salary to $10,000, and that of Matthews to $12,000, "although their duties and the work

and labor which devolved upon them were not in any way increased at that time." It is further alleged that salaries were allowed as follows: To Headley $10,000 for 1909, $12,-000 for 1910, $16,000 for 1911 and 1912, each, $5,333 for 1913, $6,000 for 1914 and $1,800 for 1915, and to Matthews, $12,000 for 1909, $16,000 for 1910, $30,000 for 1911 and 1912, each, $10,000 for 1913 and $12,000 for 1914 and 1915, each.

At the meeting of the directors held December 31, 1910, a resolution was passed allowing Matthews extra compensation of $16,000 and Headley $6,000 "for their good and valuable services rendered the company during the last year." The bill shows that a dividend of fifty per cent. was declared in each of the years 1910 and 1911, ten per cent. in 1912 and 1913, six per cent. in 1914, and that none was declared in 1915. In November, 1915, a controlling interest in the stock of the corporation was sold to R. E. Rodda, of Lancaster, Pa., and "certain associates" by Henry E. Matthews. In January, 1916, a board of directors and new officers were elected and none of the former board were continued. The original bill was filed on the 27th of January, 1916. It is also alleged that about the 1st of May, 1913, Henry W. Matthews purchased valuable property in Baltimore City, which is described in the bill, and that a considerable portion of the money wrongfully paid from the treasury of the company to him was used in the purchase, that Headley is a non-resident of the State and has no property here except ninety-eight shares of the company's stock, and that Kurtz has nothing here except fifty-three shares of this stock, and the bill prays that they be enjoined from selling, encumbering or in any way disposing of their respective properties. It further prays that the defendants be required to account for and repay to the plaintiff the sum of $16,000 paid Matthews and the sum of $6,000 paid Headley on December 31st, 1910, with interest, and that the Court may by its decree declare that the salaries of Matthews and Headley

for the years 1908, 1909, 1910, 1911, 1912, 1913, 1914 and 1915, and each of them, were greatly excessive, and that the defendants, and each of them, be required to account to and pay to the plaintiff all sums paid to Matthews and Headley as salaries in excess of such sum, if any, which the Court may find they are fairly entitled to receive for their services, with interest.

One of the most important questions presented for our consideration is, whether, under the circumstances, the bill in equity can be maintained in the name of the corporation. It is not denied by the appellants that if the facts be as alleged in the bill, minority stockholders, unless barred in some way, would be entitled to relief, but they contend that the corporation can not properly sue under the circumstances. They do not claim that the general rule is that a corporation cannot proceed in equity to obtain redress for illegal, fraudulent, *ultra vires* or grossly negligent acts of its directors and officers and that could not well be claimed, for without quoting from them, the cases of *Booth* v. *Robinson,* 55 Md. 419; *Emerson* v. *Gaither,* 103 Md. 564; *Murphy* v. *Penniman,* 105 Md. 452; *Thomas* v. *Penniman, ibid.* 475; *Gaither* v. *Bauernschmidt,* 108 Md. 1, and others which might be cited, establish the right of a corporation to proceed in equity in such cases. But the question whether a bill can be maintained in the name of the corporation under such circumstances as are here alleged to exist has not been definitely determined by this Court. It is not alleged that the corporate stock of the company has been in any way impaired, that any creditors have suffered or are in danger of suffering any loss by reason of the alleged acts of the defendants, nor are any facts alleged which show that any one has been or could be injured more than he would have been if the money had been distributed in dividends which the directors could have legally and properly done, so far as the bill discloses, unless it be those who were minority stockholders at the times of the transactions. It is shown that after all the

acts complained of, Henry W. Matthews, who was one of the two officers and directors that received the money alleged to have been fraudulently and illegally paid (nearly two-thirds of it having been paid to him) transferred a controlling interest in the company to those who are now claimed to be prosecuting this case in the name of the company, although it is not alleged that they did not get exactly what they bargained for, or that they were in any way imposed on by Matthews.

The bill is peculiar in several respects, but particularly in the fact that it is not shown how many shares of stock were owned by the defendants, or how many by minority stockholders, or indeed how many Matthews sold, except that it was a controlling interest. It is not in terms alleged that there were any minority stockholders, outside of some of the defendants, but it does in several places speak of "minority stockholders," and it may be inferred that there were some, other than the defendants, who held shares, although as far as the bill shows, they may have had two, two hundred or more. As it is not alleged that the books of the company are not in its possession, the Court should have been informed as to how the stock was held, for although the authorities are not uniform on the subject, we can have no doubt that if the holders of *all* the shares of stock assented to such payments to the officers as are here complained of, and a controlling interest in the company was afterwards transferred, the corporation could not recover the same, or any part thereof—at least unless it was shown that creditors were or might be affected by the payments. If the owners of most of the stock took part in or gave their assent to such payments, it is difficult to understand upon what principle a Court of equity should give its aid to any other than minority stockholders, who had no part in the payments or had not acquiesced therein, unless there are creditors or any other innocent parties to be protected through proceedings by the corporation.

The bill does, however, state that Henry W. Matthews had a controlling interest in the company, which he sold to Rodda and his associates, and which must have amounted to at least 351 shares, that Headley had ninety-eight, Kurtz fifty-three, Charles E. Matthews six, Youse twelve, Fluharty three and Suchting seven shares—making 530, or 75 5/7 per cent. of the whole, but there is nothing to show that Henry W. Matthews did not have more than 351 shares. Nor can we be certain that C. E. Matthews, Youse, Fluharty and Suchting did not have more than stated above, as the bill simply alleged they had those shares in 1908, and in the same connection it alleges that Kurtz had seven, while in the prayer for the injunction against him it is alleged he is the record owner of fifty-three shares, although it does not state when he obtained the additional ones. But assuming that they only had 530 shares, the question is, whether a Court of Equity should permit the company, now in control of other parties, to require the defendants to return to it the $22,000 paid Matthews and Headley as extra compensation and whatever, if anything, may be determined to be in excess of reasonable and just salaries paid them. For illustration, let us assume that there should be a reduction of one-third from the salaries allowed those two for the eight years, that would amount in round numbers to $70,000, which added to the $22,000 would be $92,000. If the minority stockholders held twenty-five per cent. of the stock, and the amount had been declared in dividends, they would have been entitled to $23,000, and those who were directors to the remainder. If Matthews had retained his stock, assuming he only had 351 shares, his interest in that sum would have been about $46,000, but as he sold to Rodda and his associates, they would, according to the appellant's theory, get that amount. It is not shown what they paid for the stock, but assuming they paid par for 351 shares, that amounted to $35,100, while they would get by this claim about $46,000 or nearly $11,000 more than they paid Matthews, or if they paid as much as $130 per share for it, the result would be they would get Matthews'

stock for nothing, although the bill does not allege that they did not get what they contracted for, that the stock of the company was in any way impaired, that any creditors were injured or affected, or even that the corporation was not in a flourishing condition. It is true it alleges that there were 300 shares of preferred stock, but there is not a word as to who owned them, or a suggestion that that stock was injured by the payments complained of. If we assume that the payments were improperly made, the directors could unquestionably and properly, so far as this bill discloses, have distributed those amounts as dividends, which would have affected the security of the preferred stockholders as much as the payments to Matthews and Headley did.

The authorities are by no means uniform as to whether a shareholder who becomes such after the acts complained of were committed can sue, and when we determine that question we are still met with the further question whether the suit can be maintained by the company, as this bill is in the name of the corporation. In *Home Fire Ins. Co.* v. *Barber*, 67 Neb. 657, 93 N. W. 1024, 60 L. R. A. 927, JUDGE Roscoe POUND discusses the subject fully and ably. That was a case in which the corporation sued, and JUDGE POUND said: "This raises numerous and difficult questions. It must be determined whether the present stockholders, or any of them, are entitled to complain of the acts of the defendant and of his past management of the company; for, if any of them are so entitled, there can be no doubt of the right and duty of the corporation to maintain this suit. It would be maintainable in such a case, even though the wrongdoers continued to be stockholders and would share in the proceeds. 1 *Morawetz, Private Corporations,* sec. 294." In that case all of the stock had changed hands—the parties in control owning every share of it. The Court, therefore, considered the other questions raised, and said, amongst other things, "Sound reason and good authority sustain the rule that a purchaser of stock can not complain of the prior acts and management of the corporation," citing *Hawes* v. *Oakland*,

104 U. S. 450; *Dimpfel* v. *O. & M. R. Co* , 110 U. S. 209; *Taylor* v. *Holmes,* 127 U. S. 489; *S. W. Nat. Gas Co.* v. *Fayette Fuel Gas Co.,* 145 Pa. 13, 23 At. 224; *Alexander* v. *Searcy,* 81 Ga. 536, 8 S. E. 630; *Clark* v. *Am. Coal Co.,* 86 Iowa, 436, 53 N. W. 291, and other cases, as well as 4 *Thomp. on Cor.,* sec. 4569. He further said that "such a stockholder ought not to be allowed to sue, unless the mismanagement of its effects continue and are injurious to him, or it affects him specially and peculiarly in some other manner." Again, he said: "That stockholders who have acquired their shares and their interest in the corporation from the alleged wrongdoers and through the prior mismanagement have no standing to complain thereof."

The Court in that case said the rule, that a suit for mismanagement can not be maintained by one not a stockholder at the time, had been criticized as based on jurisdictional considerations peculiar to the Federal courts and on obsolete common law doctrines as to champerty and maintenance, and added: "In our judgment, it does not depend upon either," and discussed the Federal equity rule. While it is true that the Supreme Court did adopt a rule which is known as the 94th Rule in Equity, JUDGE POUND pointed out that in doing so the question of jurisdiction was not the sole object of the Court. In *Venner* v. *Great North. R. R. Co.,* 209 U. S. 24, JUSTICE MOODY said, in speaking of that rule: "But this argument overlooks the purpose and nature of the rule. The rule simply expresses the principle which this Court, after a review of the authorities, had declared in *Hawes* v. *Oakland (Hawes* v. *Contra Costa Water Co.*), 104 U. S. 450, to be applicable in the decision of a stockholder's suit of the kind now under consideration." There is, then, much to be said in favor of the construction placed on the rule by JUDGE POUND.

In addition to the authorities cited in *Barber's Case,* there are other decisions by State courts which deny the right of subsequent stockholders to sue if their vendors are estopped from suing by their participation, acquiescence, etc. *Just*

v. *Idaho Canal and Im. Co.,* 16 Idaho, 639, 102 Pacific, 381;
*Schilling-Schneider Brewing Co.* v. *Schneider,* 110 Mo. 83,
19 S. W. 67; *McCampbell* v. *F. H. R. Co.,* 111 Tenn. 55, 77
S. W. 1070; *Trimble* v. *Am. Sugar Ref. Co.,* 61 N. J.
Equity, 340, 48 At. 912; *Boldenweck* v. *Bullis,* 40 Colo. 259,
90 Pac. 634; *Erny* v. *G. W. Schmidt Co.,* 197 Pa. 484, 47
At. 877; *Babcock* v. *Farwell,* 245 Ill. 41, 19 Ann. Cas. 74.
In the last case the Court said, if the stockholder "has him-
self consented to or participated in the acts constituting such
wrong, or has waived his right to object to them, he can not
afterwards maintain a bill, on account of such transactions,
for the benefit of the corporation or of other stockholders.
* * * Neither can an assignee of stock maintain a suit in
regard to transactions with the corporation, done or assented
to by his assignor. The purchaser of shares of stock acquires
no greater rights than his vendor. He holds by the same
title and subject to the same liability." See also 4 *Thomp-
on Cor.* (2nd ed.), sec. 4631, 10 Cyc. 974. In *McCampbell*
v. *F. H. R. Co., supra,* CHIEF JUDGE BEARD refers to nu-
merous authorities, including leading text-books on corpora-
tions and decisions of courts, on acquiescence, laches, etc.

In *Pollitz* v. *Gould,* 202 N. Y. 11, 94 N. E. 1088, Ann.
Cas. 1912D, 1098, one of the cases relied on by the appellee,
it is said: "If the prior holder should give binding consent
to the transaction, this under certain circumstances undoubt-
edly would prevent the subsequent purchaser from question-
ing it. But, in the absence of special circumstances, I fail to
see any principle of estoppel or logic which makes a subse-
quent purchaser of stock so subject to a fraudulent corporate
transaction that the purchaser may not insist upon it being
set aside." Even in Alabama, where the Court has gone as
far as any we are aware of in sustaining the right of a trans-
feree to maintain a suit, it was held in *Parsons* v. *Joseph,* 92
Ala. 405, 8 So. 788, that a transferee having notice that the
transferer was barred can not sue. In 2 *Machen on Cor-
porations,* sec. 1169, it is said: "By the weight of American

authority, a transferee of shares can not maintain a share-
holder's bill on account of any transaction in which the trans-
ferer has acquiesced." In *Tompkins* v. *Sperry-Jones & Co.,*
96 Md. 560, 583, we said: "In fact, the bill does not allege
that any of the present bond or stock holders were the origi-
nal holders of those securities, or that they received them from
the defendants or from either of them.  Such an allegation
has in several cases been held to be necessary to enable a
receiver to maintain a suit of this character, even when it is
free from the other objections existing in the present case.
*Dimpfel* v. *O. & M. R. Co.,* 110 U. S. 209-210; *Robinson* v.
*W. V. Loan Co.,* 90 Fed. 770-2." It will be remembered
that the *Dimpfel Case* is one of those quoted in *Barber's
Case, supra.*

If this was a suit by stockholders, it would seem to us to
be clear that holders of the stock who become such after the
transactions complained of took place, should not be per-
mitted to recover against the directors.  The payment of
the salaries to Matthews and Headley were not void, but
only voidable, if they are admitted to have been excessive.
It is not contended that the directors were not authorized to
allow them such salaries as properly compensated them for
their services, taking into consideration their value to the
corporation, the results accomplished by them, and other
things which fairly entered into a proper consideration of the
amount they should be paid.  By the general corporation
laws of this State in force when this company was chartered,
it was authorized to appoint a president from among the
directors, and such officers or agents as its business required,
and "to allow them a suitable compensation."  Section 62 of
Art. 23, Code of 1904.  By the new corporation laws, Chap-
ter 240 of Acts of 1908 (Sec. 10), it is provided that "The
board of directors may exercise all the powers of the corpora-
tion, except such as are by law or by the certificate of incor-
poration or by the by-laws conferred upon or reserved to the
shareholders or members," etc.  Sec. 10 of Art. 23 of Ann.

Code. The Court would not be authorized to substitute its judgment for theirs as to what are proper salaries, provided they acted in good faith within their powers, and the salaries fixed by them were not clearly excessive. Even if it be found that the salaries were excessive, or the additional compensation allowed the officers at the end of the year 1910 were excessive or improper under the circumstances, those acts are not void, but only voidable. Those who held over 75 per cent. of the stock were the same persons who constituted the board of directors, and it is clear under the authorities that they should not be given relief in a Court of equity from what they themselves did, when acting in the capacity of directors.

We are also of the opinion that the assignees of Matthews are likewise not entitled to recover. If a voidable act is affirmed by all the stockholders and afterwards a majority of the stock is purchased, it surely could not be contended that the assignees of such stock could go behind the affirmance and recover, at least unless there were creditors. It would place a premium on speculations in stocks and make a Court of equity an instrument of injustice, if that were allowed. If then the owners of at least three-fourths of the stock were estopped from taking any action, and a controlling interest in the company has been obtained from one of them, why should the assignees be in any better position to institute proceedings than if all of the former stockholders were estopped, excepting in so far as it may be necessary to protect those who were minority stockholders at the times of the transactions complained of and are not barred? We can see no valid distinction between the two, although it must be admitted that some authorities seem to hold the contrary.

Of course, we recognize the fact that the title to property is in the corporation and not in the stockholders, but if the latter have no standing in a Court of equity, they can not obtain relief by the use of the company's name. As said by JUDGE POUND in *Barber's Case, supra,* "It would be a re-

proach to courts of equity if this were not so. If a Court of equity could not look behind the corporation to the shareholders, who are the real and substantial beneficiaries, and ascertain whether these ultimate beneficiaries of the relief it is asked to grant have any standing to demand it, the maxim that equity looks to the substance, and not the form, would be very much limited in its application." JUDGE McSHERRY said in *Pott & Co.* v. *Schmucker,* 84 Md. 535, 553: "The law will not in any case suffer the corporate name—the mere shadow—to be interposed for the purpose of defeating substantial rights depending for their ultimate vindication not upon the accidental *form* of a transaction, but upon its inherent equity and justice." See also *Swift* v. *Smith,* 65 Md. 428; *Tompkins* v. *Sperry-Jones & Co.,* 96 Md. 583, where it was said: "They at that time held all of its stock and were the sole owners of the company. They were in equity the company itself." Many other authorities might be cited, but a great many are collected in *Barber's Case, McCampbell's Case, supra,* and others cited in this opinion, and we will content ourselves by referring to them.

If the minority stockholders are not barred by laches, acquiescence or in some way, they are entitled to relief, if they can satisfy the Court that the payments were excessive or unauthorized. Under our decisions the corporation is primarily the party to proceed in such cases, and it is only when it is under the control of those complained of, and they will not act, or if they did act they could not be relied on to do justice to the other stockholders, that the latter are permitted to sue in their own names, unless they have suffered some peculiar injury independent of what the company has suffered. *Booth* v. *Robinson, supra; Fisher* v. *Parr,* 92 Md. 245.

The question then is whether this bill can be sustained in the name of the corporation, and if so how the defendants can be protected from claims we have spoken of as not entitled to relief. Inasmuch as by the change of the majority of stock

those who were minority stockholders at the time of the transactions complained of are now able to have the suit brought in the name of the company, we are of the opinion that it can be maintained, in that name, instead of in the names of the minority stockholders, but for their benefit. But while that is so, if there be any recovery by reason of the claims spoken of, it can only be to the extent of the proportions of the sum recovered due such minority stockholders, if any, as are not barred by laches, limitations, acquiescence or other way sufficient to bar them in equity, and anything recovered should be directed to be paid to them by the corporation. Any defense that could have been made against the minority stockholders if they had sued in their own names should be allowed, notwithstanding the fact that the suit is in the name of the corporation. It seems to us that that course is the only one which in equity and justice can be adopted in this case. The purchasers from Matthews have lost nothing, so far as the bill discloses, and if he deceived them in the sale, they have their remedy against him individually, but they should not be permitted to use the corporate name to veil defects in the title to the stock transferred to them by the former stockholder who received about two-thirds of the amounts claimed to have been improperly paid.

What was done in *Brown* v. *DeYoung,* 167 Ill. 549, can very appropriately be adopted in this case although that was a suit by stockholders. There it was conceded that DeYoung was only entitled to receive $500 a year, and that he did receive when he was secretary $2,500 a year, and while secretary and treasurer $3,500 a year, but with the knowledge and consent of the holders of the majority of the stock—some of the minority stockholders not being aware of it. The Court held that ordinarily in a suit to compel the restoration to a corporation of misappropriated funds, it is proper to require it to be paid to the corporation, and not to the stockholders personally, but, "to work out relief in this case through the treasury of the corporation, in the ordinary way,

is to place the undeserving upon equality with the meritorious." And later on said: "Perhaps for the reason that no such case was ever before complained of, we have been referred to no authority, and know of none, for affording certain relief to the innocent stockholder without giving the culpable one what he is not entitled to, as would be the result if the money be decreed to be paid, generally, into the corporation's treasury. But the lengthening reach of equity into the manifold intricacies of modern business should not be drawn back simply for lack of authoritative decisions to guide us, where reason and every equitable consideration point the way with so much clearness." Again it was said: "Having jurisdiction to compel DeYoung to account for the salary wrongfully received by him, it strikes us as being a manifest falling short of appropriate relief to deny jurisdiction to compel the application of so much of such money in a manner that will give to them who have been injured and are in a position to complain, their just proportion of it, and to refuse any part of it to them who are not equitably entitled to it."

The good sense and justice of that reasoning appeal to us, as a happy solution of the difficulties of such a situation. As stockholders are supposed to sue for the benefit of the corporation when its hands are tied by the majority who are charged with using it for their own or other illegal purposes, if the course pursued in *Brown* v. *DeYoung* can be properly adopted in that class of cases, as we think that and some other cases cited clearly show, we can see no reason why it can not be done under the circumstances of this case, where the suit is brought in the name of the corporation. If no precise precedent be found, then what we have quoted from *Brown* v. *DeYoung* furnishes sufficient reason for making one. There are, however, other cases which tend to sustain that course of procedure.

In *Emerson* v. *Gaither*, 103 Md. 564, the suit was by a receiver of an insolvent bank against directors for illegal and

negligent acts, amongst others for declaring dividends when the bank was in such condition that they could not be lawfully declared. We said on page 581, that the bill did not show whether the creditors had been paid in full, but "if they have, manifestly the receiver should not be permitted to recover for the benefit of the stockholders by reason of the declaration of dividends, inasmuch as the stockholders themselves received the dividends and should not be permitted to hold the directors responsible for them." In that case the Court announced a rule which may not be in accord with the decisions of some other courts, but in our judgment it is certainly the just one. It would be very unjust to require the defendants who have been summoned to pay the whole amount, if any, which may be found to have been improperly paid Matthews and Headley, and then let Headley have his portion and the transferees have the portion which would have gone to Matthews, if he had not sold the stock, and all the money was required to be paid to the corporation. In *Eaton* v. *Robinson,* 19 R. I. 146, 32 At. 339, the Court held that: "Where directors of a corporation wrongfully appropriated money in salaries to themselves, the Court may, in an action by the minority stockholders against the majority and the corporation, when the prayer is ample, decree direct payment by the majority stockholders, who were directors, to the minority, of their aliquot share of the amount found due the corporation."

Inasmuch, then, as we are satisfied that there should be no recovery for the benefit of the transferees of Matthews, or for any of the shareholders who acquiesced in the payments complained of, but as the corporation is primarily the party to sue, when it can be induced by minority stockholders to sue, we are of the opinion that the above is the proper course to pursue. The corporation is in the nature of a trustee suing for its *cestui que trust.* That course does justice to everyone, if there be a recovery. Some of the cases seem to go so far as to hold that where there is one innocent stockholder, in

suit in the name of the corporation, the whole amount found to be due must be recovered, on the principle apparently that: "A little leaven leaventh the whole lump," but we can not apply that doctrine to a case such as this. Inasmuch as over five years elapsed before suit was brought after the extra compensation was paid to Matthews and Headley, and more than three years elapsed after the payment of the larger salaries complained of, the Court should be thoroughly satisfied that such minority stockholders as claim to be entitled to be paid were not guilty of laches, that there was no acquiescence on their part, etc., before allowing anything for them, if there be any recovery.

We do not think the point made by the appellants, that fraud is not alleged with sufficient definiteness is tenable. Although we have referred to contradictory and inconsistent statements, yet there is sufficient alleged in the bill. Nor do we think that the question of limitations or laches is reached by the demurrers, so as to enable us to properly pass on them. The bill alleges that the stockholders were kept in ignorance of the transactions, and while it indicates that the resolution of December, 1910, and the amounts of salaries paid were to be found in the books, and although sections 72, 73 and 74 of Article 23 might afford minority stockholders opportunity to know what is on the books, such matters can only be determined when the facts are known. The demurrers were to the whole bill, and as we think the bill is sufficient to require answers, we will affirm the order overruling the demurrers. Answers can be filed within such time as the lower Court allows after the mandate from this Court is received.

> *Order affirmed, the cause remanded for further proceeding; the costs to abide the final determination of the case.*