Seward N. LAWSON, William H. Peirce, and Warren A. Risk

v.

**BALTIMORE PAINT AND CHEMICAL CORPORATION, a body corporate of the State of Maryland, Edward Krock, Victor Muscat, Robert L. Huffines, Jr., A. Alex Shuford, Roy M. Cohn and Defiance Industries, Inc., a body corporate of the State of Ohio.**

Civ. No. 18497.

United States District Court
D. Maryland.

April 16, 1969.

Richard D. Rosenthal and David Freishtat, Baltimore, Md., for plaintiffs.

Decatur H. Miller and John Martin Jones, Jr., Baltimore, Md., for defendant Shuford.

George W. McManus, Jr., Baltimore, Md., for other defendants.

THOMSEN, Chief Judge.

This is a shareholders' derivative suit brought by three shareholders of Baltimore Paint and Chemical Corporation (Corporation), five of its directors and former directors, and one of its shareholders. Corporation was incorporated in Maryland and has its principal office and place of business in Baltimore. Federal jurisdiction is founded on diversity of citizenship and amount in controversy, which are not disputed. Venue in this Court exists by virtue of 28 U.S.C.A. § 1401.

The original complaint was filed on June 23, 1967, against Corporation and Roy M. Cohn, Edward Krock, Victor Muscat and Robert L. Huffines, Jr. The amended complaint was filed on December 19, 1967, adding A. Alex Shuford and Defiance Industries, Inc. (Defiance) as additional defendants.

The amended complaint alleges in great detail that at some time prior to January 1, 1961, defendants Krock, Muscat and Huffines formed a plan and conspiracy for acquiring, directly or indirectly, for their personal benefit, effective control of a "multitude of corporations," including Corporation; that pursuant thereto those three and others who from time to time joined them in the conspiracy, including defendants Shuford and Cohn, acquired control of Corporation and caused it to make payments to them in the form of unjustified salaries, legal fees and reimbursement of expenses, and to engage in other transactions, wasting Corporation's assets. The amended complaint contains eight "causes of action," each dealing with a different transaction or series of transactions, alleged to have been carried out as part of the general plan and conspiracy.

Each defendant except Corporation has moved to dismiss the amended complaint and each cause of action alleged therein against him [1] on several grounds, including: (1) failure to meet the requirements of Rule 23.1, F.R.Civ.P., (2) laches, and (3) failure to state a claim upon which relief can be granted. Corporation has moved to strike all or parts of the complaint for similar reasons. Each defendant except Corporation has also moved to quash the service of process on him on the ground that he was not properly served under applicable law.[2]

*Rule 23.1*

■ Rule 23.1, F.R.Civ.P., entitled "Derivative Actions by Shareholders," requires that the complaint shall allege "that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law." This is also the substantive law of Maryland. Eisler v. Eastern States Corp., 182 Md. 329, 35 A.2d 118 (1943).

The amended complaint alleges that two of the plaintiffs became shareholders of Corporation in December 1964; the other plaintiff became a shareholder in December 1965. They have held varying amounts of stock since those dates, as they bought and sold shares from time to time. One of the plaintiffs has continuously held his original shares since December 1964.

Many of the transactions in the first, fourth and fifth causes of action, and all of the transactions in the second, third, sixth, seventh and eighth causes of action took place before December 1964. Each defendant except Corporation has moved to dismiss the amended complaint and each cause of action alleged therein against him for failure to comply with the requirement of Rule 23.1, quoted above.

Plaintiffs seek to prevent such dismissals by alleging in paragraph 2 of the amended complaint that each plaintiff was a shareholder of Corporation "at the time of each transaction complained of which occurred on or after [the date he acquired his stock], and, with respect to any events alleged herein which occurred prior to that date, was a shareholder of Corporation at the time of the culminating transaction or transactions, with respect to which such events are alleged, giving rise to a liability or liabilities herein asserted."

Plaintiffs rely on Rule 9(a) and (c) to support their argument that this allegation is a sufficient compliance with Rule 23.1. That argument cannot prevail against the specific requirement of Rule 23.1 quoted above.

It is true that the amended complaint alleges facts sufficient to show that the plan and conspiracy formed by defendants Krock, Muscat and Huffines is still in existence, and that defendants Cohn and Defiance joined and still are participants therein. On the other hand the amended complaint itself shows that most of the transactions alleged to have been entered into before December 1964 were in fact consummated before December 1964.

There have been few if any reported decisions dealing with Rule 23.1, which became effective in July 1966. But earlier cases state the controlling principles. See particularly, McQuillen v. National Cash Register Co., 22 F.Supp. 867 (D. Md.1938), aff'd 112 F.2d 877, 882 (4 Cir. 1940); Matthews v. Headley Chocolate

---

1. The masculine pronoun will be used herein to include Defiance Industries, Inc.

2. The motions have been submitted to the Court for decision on the amended complaint and the supporting affidavits of the three plaintiffs, the affidavit of plaintiff Lawson in opposition to the motions to dismiss the original complaint, the motions filed by the several defendants, the affidavits of Eugene O'Brien and of defendants Krock, Huffines and Cohn in support of motions filed in opposition to the original complaint, memoranda of the shares of Corporation bought and sold by plaintiffs, and various answers and memoranda filed on behalf of the several parties.

Co., 130 Md. 523, 100 A. 645 (1917); Eisler v. Eastern States Corp., 182 Md. 329, 35 A.2d 118 (1943); Weinhaus v. Gale, 237 F.2d 197 (7 Cir. 1956); Levitan v. Stout, 97 F.Supp. 105 (W.D.Ky. 1951); Henis v. Compania Agricola de Guatemala, 116 F.Supp. 223 (D.Del. 1953), aff'd 210 F.2d 950 (3 Cir. 1954); Pergament v. Frazer, 93 F.Supp. 9 (E.D. Mich.1949).

■ The amended complaint alleges that defendant Shuford ceased to be a director of Corporation before August 31, 1964, and does not allege that he had anything to do with Corporation after he ceased to be a director. The entire complaint must therefore be dismissed as against Shuford.

■ With respect to the other defendants, the applicable legal principles must be applied to the several causes of action alleged in the amended complaint. The first cause of action alleges that various defendants were elected directors, members of the executive committee and officers each year, and voted excessive salaries to themselves. Although the claims based on salaries voted and paid before December 1964 are barred, the claims based on salaries voted and paid after December 1964 are not barred. The first cause of action should not be dismissed.

■ The second and third causes of action are based upon allegations that in 1963 defendants terminated the services of Albert A. Shuger as president of Corporation, because of the personal spite of defendant Krock, and elected another man—not alleged to be a co-conspirator —in his place; that Shuger obtained a judgment against Corporation in 1966 based upon his discharge, which was settled thereafter; and that the discharge of Shuger caused a deterioration in the profits of Corporation. Shuger was discharged before December 1964, and no grounds for relief have been alleged based upon any wrongful conduct of the defendants in defending Shuger's suit or settling the judgment entered therein or upon any action or inaction of his successor. The second and third causes of action are barred and must be dismissed.

■ The fourth and fifth causes of action are based upon fees paid to defendant Cohn's law firm and expenses refunded to Krock, some of which were paid or refunded after December 1964, pursuant to the plan and conspiracy. Those causes of action should not be dismissed.

■ The sixth and seventh causes of action are based upon purchases by Corporation of shares in Synkoloid Company and B. S. F. Company, respectively. The purchases are alleged to have been made before December 1964, pursuant to the plan and conspiracy, and are alleged to have caused a waste and diversion of corporate assets, requiring Corporation to incur additional expense of borrowings which would not otherwise have been necessary. It is alleged that the shares of Synkoloid have become worthless and that the shares of B. S. F. have greatly decreased in value; but it does not appear from any of the material now before the Court when those events occurred. Plaintiffs do not allege that the retention of the investments, as distinguished from the original purchases, has been wrongful. The motion to dismiss the sixth and seventh causes of action will be granted, with leave to plaintiffs to amend within 30 days.

■ The eighth cause of action alleges that some of the B. S. F. shares which had been purchased by Corporation were improperly sold in August 1962 to the Employees Retirement System Fund established by Corporation, thereby giving the Fund a claim against Corporation, impairing Corporation's good will, and damaging its relationship with its employees. Since the damage to Corporation is alleged to have resulted solely from the sale of the B. S. F. stock before any of the plaintiffs became shareholders of Corporation, the eighth cause of action must be dismissed.

■ Evidence of transactions before December 1964 may be admissible to show the origin and course of the alleged

plan and conspiracy and dealings by and between the defendants. The motion filed by Corporation to strike the amended complaint in toto or in the alternative to strike many of its allegations on the ground that they are immaterial and impertinent will be denied.

### Laches

The doctrine of laches supports the rulings indicated above, but would not support the denial of any other claims without additional facts.

Defendants, except Shuford, are not entitled to have the entire amended complaint dismissed for failure to state a claim upon which relief can be granted.

### Service of Process

Each of the defendants except Corporation has moved to quash service of process on him. None of the individual defendants is a citizen or resident of Maryland and none was served with process in Maryland. Plaintiffs rely upon Article 75, section 96, Maryland Code Ann. (Supp.1965), a part of the "Long Arm" statute adopted in 1964. That section provides:

"§ 96. Personal jurisdiction over person as to cause of action arising from business, etc., in State.

"(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

"(1) transacting any business in this State;

"(2) contracting to supply services in this State;

"(3) causing tortious injury in this State by an act or omission in this State;

"(4) causing tortious injury in this State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in this State or derives substantial revenue from food or services used or consumed in this State;

"(5) having an interest in, using, or possessing real property in this State; or

"(6) contracting to insure any person, property, or risk located within this State at the time of contracting.

"(b) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." [3]

Section 97 provides: "When the exercise of personal jurisdiction is authorized by this subtitle, service may be made outside this State."

■ It is sufficient to sustain personal jurisdiction over a defendant if a plaintiff can show that the requirements of any one of the six tests in section 96 are met. In this case plaintiffs rely on (1), (2), (3) and (4).

There have been few decisions interpreting section 96, but the following statement has been reiterated by the Court of Appeals of Maryland:

"It seems clear that the purpose of the Legislature in enacting these new provisions was to give the Courts of the State personal jurisdiction over all out of state persons and corporations which constitutionally could be reached as having had sufficient Maryland contacts, under the jurisdictional yardstick established by the Supreme Court in cases such as International Shoe Co. v. State of Washington, [Office of Unemployment Compensation and Placement,] 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283." Gilliam v. Moog Industries, Inc., 239 Md. 107, 111, 210 A.2d 390, 392 (1965); Novak v. National Hot Rod Association, 247 Md. 350, 354, 231 A.2d 22, 24 (1967).

3. An amendment to (a) (6), not material in this case, was made in 1968.

Section 96 was modeled on section 1.03 of the proposed Uniform Interstate and International Procedure Act (the Uniform Act), 9B U.L.A. 307 et seq. (1966), which is set out in the margin,[4] but certain changes were made by the Maryland Legislature.

■ Most of the changes narrowed the coverage of the Uniform Act.[5] See Beaty v. M. S. Steel Co., 401 F.2d 157 (4 Cir. 1968), affirming 276 F.Supp. 259 (D.Md.1967). The changes in section 96 (a) (4), however, narrowed the coverage in one respect but broadened it in another respect, material here. Section 96 of the Maryland Act provides in pertinent part that personal jurisdiction may be exercised "over a person, who acts directly or by an agent, as to a cause of action arising from the person's * * * (4) causing tortious injury in this State by an act or omission outside the State if he regularly * * * derives substantial revenue from * * * services used * * * in this State." In the Uniform Act the services had to be "rendered" in the State.

The amended complaint, with its supporting affidavits, alleges that the individual defendants were elected and served as directors, and in some instances as officers, members of the executive committee and members of the stock option plan committee. Although after 1964 the meetings of the directors and of the committees may have been held outside Maryland, the decisions made and resolutions adopted were given effect by actions of the president and other officers and employees of the Corporation in Maryland, where its principal office and plant are located. Defendants' services, therefore, were "used" in Maryland within the meaning of section 96(a) (4). The alleged tortious injury to the Corporation was sustained in Maryland. The payment of $39,010.15 each to Krock, Muscat, and Huffines for the fiscal year ended August 31, 1965, and of $84,334.71 each to Krock and Muscat and of $45,-010.17 to Huffines for the 1966 year were "substantial", as that term is used in section 96(a) (4).

■ The foregoing findings are also true with respect to the fees paid to Cohn's law firm. Although the legal services may have been rendered in New York, they were used in Maryland. Cohn's affidavit, like those of the other individual defendants, is very cautiously worded and does not deny that he rendered services which were used in Maryland.

The Commissioners' note to section 1.03 of the proposed Uniform Act states:

"Not proposed for adoption are other special provisions better considered in connection with the substantive area of the law to which they relate. For example, the Michigan statute provides

4. " § 1.03. [Personal Jurisdiction Based upon Conduct].—(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a [cause of action] [claim for relief] arising from the person's

"(1) transacting any business in this state;

"(2) contracting to supply services or things in this state;

"(3) causing tortious injury by an act or omission in this state;

"(4) causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; [or]

"(5) having an interest in, using, or possessing real property in this state [; or

"(6) contracting to insure any person, property, or risk located within this state at the time of contracting].

"(b) When jurisdiction over a person is based solely upon this section, only a [cause of action] [claim for relief] arising from acts enumerated in this section may be asserted against him."

5. Section 96(a) (2) covers only "services", not "services and things"; (a) (3) requires that the tortious injury be "in this State"; and (a) (4) substitutes the word "food" for the word "goods". See, generally, Auerbach, "The 'Long Arm' Comes to Maryland", 26 Md.L.Rev. 13 (1966). But see (a) (6), as amended in 1968.

as a jurisdictional basis 'Acting as a director, manager, trustee, or other officer of any corporation incorporated under the laws of, or having its principal place of business within, the state of Michigan.' [Comp.Laws 1948, § 600.705(6), P.A.1961, No. 236] Mich. Stat.Ann. § 27A.705(6). A provision of this sort is of substantial importance in connection with shareholder derivative suits. It would most appropriately be placed with other statutes directly relating to corporations." 9B U.L.A. 313.

It is not necessary in this case to decide whether, in view of the adoption by Maryland of section 96(a) (4) in the form set out and discussed above, the mere fact that defendants were officers and directors of a Maryland corporation is sufficient to subject them to the jurisdiction of this Court in this action. The allegations of the amended complaint go beyond the mere fact that the individual defendants acted as directors or officers of a corporation incorporated in Maryland *or* a corporation having its principal place of business in Maryland. In this case Corporation was incorporated in Maryland *and* has its principal office and place of business in Maryland *and* has its plant in Maryland, *and* each of the individual defendants has derived substantial revenue from his services as a director or officer or both, which services, as we have seen, were used in Maryland within the meaning of section 96(a) (4). It is further alleged that defendants' acts caused tortious injury to Corporation in Maryland.

No constitutional limitation bars the exercise of personal jurisdiction over defendants in this case. Defendants have "purposefully avail[ed themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws". Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). In view of the benefits alleged to have been received by defendants from this Maryland-based corporation, it is clear that they have "certain minimum contacts

with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). See also Gilliam v. Moog Industries, supra. Cf. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

The difficulties which plaintiffs would face if they were unable to sue the individual defendants here are apparent from the fact that the individual defendants are residents of North Carolina, Connecticut, Massachusetts and New York.

Applying section 96(a) (4), in the light of the construction of the "Long Arm" statute by the Maryland Court in Gilliam v. Moog Industries and Novack v. National Hot Rod Association, quoted above, this Court concludes that the motions of the individual defendants (except Shuford) to quash the service of process should be denied.

Since the motion to dismiss the complaint against Shuford will be granted, see discussion of Rule 23.1, supra, it is unnecessary to rule on his motion to quash service of process, which raises the question whether the Maryland "Long Arm" statute should be retroactively applied. See Gilliam v. Moog Industries, supra; Hardy v. Rekab, Inc., 266 F.Supp. 508 (D.Md.1967).

Plaintiffs' only allegations with respect to Defiance are: that it presently controls Corporation; that defendants Krock, Muscat and Cohn control it; that its predecessor corporations gave proxies to defendants Krock, Muscat and Huffines, which they used improperly at shareholder meetings prior to December 1964; and that it knowingly aids and permits the individual defendants to exercise control of Corporation for their personal benefit. Plaintiffs do not allege that Defiance does any business in Maryland, or that it meets any of the tests of section 96. See Keckler v. Brookwood Country Club, 248 F.Supp. 645 (N.

D.Ill.1965). Its only contact with Maryland is as a shareholder of Corporation. No section of Maryland's "Long Arm" statute, Article 75, sections 94 to 100, would allow out-of-state service of process under these circumstances. The motion of Defiance to quash service of process must be granted.

Counsel should prepare and agree upon a proper order.