Rolf TOPIK et al.

v.

CATALYST RESEARCH CORPORATION et al.

Civ. No. 70-1228-M.

United States District Court,
D. Maryland.

March 22, 1972.

J. Earle Plumhoff, Towson, Md., James V. Joy, Jr., and Robert M. Reagan, New York City, for plaintiffs.

Lewis A. Noonberg and Paul V. Niemeyer, Baltimore, Md., and Edmund K. Trent, Pittsburgh, Pa., for all defendants except Electronics Aids, Inc.

JAMES R. MILLER, Jr., District Judge.

*Memorandum Opinion and Order*

This is a stockholders derivative suit arising from the merger of a Maryland corporation with a Delaware corporation. Federal jurisdiction is founded on diversity of citizenship under 28 U.S.C. § 1332 and an amount in controversy which are not disputed.

I

Plaintiffs are individual stockholders of a former Maryland corporation named Electronic Aids, Inc. (herein referred to as E.A. Maryland). E.A. Maryland was

incorporated in March of 1958 with the purpose of selling mechanical teaching aids. In 1965 Mine Safety Appliances, Inc., a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania (herein referred to as M.S.A.), purchased 70% of the outstanding shares of E.A. Maryland in order to make E.A. Maryland a subsidiary of M.S.A.'s preexisting subsidiary, Catalyst Research Corporation (herein referred to as C.R.C.). C.R.C. is a Maryland corporation with its principal place of business in Baltimore.

Pursuant to an agreement of August 7, 1970, E.A. Maryland was merged into Electronics Aids, Inc. of Delaware (herein referred to as E.A. Delaware), a preexisting wholly owned subsidiary of American Standard, Inc., a Delaware corporation (herein referred to as A.S.I.). E.A. Maryland announced a stockholders meeting would be held on September 10, 1970 in Baltimore, to ratify the August 7, 1970 Agreement. The stockholders special meeting was held and the merger approved and executed over the objection of the plaintiffs. Subsequently on October 28, 1970 this suit was instituted by the plaintiffs as individual stockholders and on behalf of all other stockholders of E.A. Maryland.

The second count of the complaint [1] is against C.R.C., M.S.A., and five individual defendants for breach of fiduciary duty arising from their control and management of E.A. Maryland. The individual defendants, as will be more fully explored below, were directors and/or officers of E.A. Maryland and have filed motions to quash service and dismiss the complaint on the ground that they do not have sufficient nexus with Maryland to sustain *in personam* jurisdiction over them in this court. Service on the five individual defendants was made pursuant to Article 75, section 78, Annotated Code of Maryland (1969 Replacement Volume).

However, counsel for all parties agree that service should have been made under the Maryland Long Arm statute, Article 75, section 96, Annotated Code of Maryland, *supra*.[2] Accordingly, this court will look to the Maryland Long Arm statute, as tempered by applicable Supreme Court decisions, to determine the issue. The individual defendants, Hulme, Deike, Carville, Merry, and Ryan, each filed an affidavit in connection with their motion. Supplemental affidavits were filed by Frank E. Foote, secretary of E.A. Maryland and C.R.C., and by Edward Hoopes, Esq., counsel for M.S.A. and C.R.C. Under Rule 12(c), F.R.Civ.P., the motions to dismiss will be considered as motions for summary judgment.

All five of the individual defendants are residents of Pennsylvania, and at no time have any of them been Maryland residents. Deike, Ryan, and Merry have been and are presently directors of M.S.A., and all of the individual defendants have been and are presently officers of M.S.A. Each defendant has been and is presently a director of C.R.C. and Dieke and Hulme have been officers of C.R.C.

All defendants were directors of E.A. Maryland at the time of the August 7, 1970 agreement and the subsequent merger. Carville and Merry were never officers of E.A. Maryland and Deike is described as an officer in his capacity as Chairman of the Board. Ryan was President of E.A. Maryland from September 4, 1964 until March 31, 1970 when Hulme became President and remained in the office until the merger.

No meeting of stockholders or directors of M.S.A. was ever held in Maryland. C.R.C.'s annual stockholders meetings were held in Baltimore, Maryland, and generally each individual defendant attended all of these meetings. Immediately following the annual meeting of stockholders of C.R.C. a board of directors

---

1. The first count of the complaint is against C.R.C. alleging an unfair allocation of the funds paid by A.S.I. for the stock of E.A. Maryland. However, the first count is not relevant to the motions considered by this opinion.

2. At oral argument on the motions to dismiss, counsel for the defendants waived any objection to the manner of service while preserving defendants' objections based on lack of *in personam* jurisdiction over them.

meeting was also held in Baltimore to elect corporate officers for the following year with each defendant generally attending all of these meetings. The affidavits allege that no E.A. Maryland business was transacted at the C.R.C. Baltimore meetings. The routine C.R.C. corporate decisions were made at monthly C.R.C. board of directors meetings held in Pittsburgh, Pennsylvania.

Annual stockholders meetings of E.A. Maryland were held in Baltimore, Maryland and each was followed by a board of directors meeting where the primary purpose was to elect officers for the following year. With the exception of Ryan, each of the defendants generally attended all of these annual meetings. Ryan attended all but the last series of annual meetings which were held on March 31, 1970. Monthly board of directors meetings were held in Pittsburgh, Pennsylvania for dealing with the every day corporate affairs. A special stockholders meeting of E.A. Maryland was held in Baltimore on September 10, 1970 which approved the merger with E.A. Delaware.[3] Following the special stockholders meeting a final E.A. Maryland board meeting was held in Baltimore on the same day. A C.R.C. board of directors meeting was then held to authorize the transfer of C.R.C.'s 700,000 shares of E.A. Maryland stock to E.A. Delaware. All of the defendants attended each of the September 10 meetings except Ryan who was consistently absent.

The uncontradicted affidavit of Frank F. Foote, secretary of E.A. Maryland, states that a board of directors meeting of E.A. Maryland was held in Pittsburgh, Pennsylvania on August 6, 1970. At that meeting the August 7, 1970 agreement was discussed and approved. Counsel for M.S.A. and C.R.C. state that the August 7 agreement was executed by the respective signatories thereto in New York, New York and in Pittsburgh, Pennsylvania.

Foote's first supplemental affidavit established that no payments of money or property, as compensation for attending directors meetings or otherwise, was given to any of the five individual defendants in their positions as directors and/or officers of C.R.C. or E.A. Maryland.

## II

The burden of alleging and proving jurisdictional facts rests upon the plaintiff. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Malinow v. Eberly, 322 F.Supp. 594, 600 (D.Md. 1971); Hare v. Family Publications Service, Inc., 334 F.Supp. 953 (D.Md. 1971).

If *in personam* jurisdiction exists here over the individual non-resident defendants, its basis rests on the Maryland Long Arm Statute. Article 75, section 96, Annotated Code of Maryland (1969 Replacement Volume as amended) states in part:

"(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

"(1) Transacting any business in this State;

\* \* \* \* \* \*

"(3) Causing tortious injury in this State by an act or omission in this State;

"(4) Causing tortious injury in this State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in this State or derives substantial revenue from food or services used or consumed in this State;"

\* \* \* \* \* \*

Application of the Maryland Long Arm statute involves two steps.

3. Actually two special stockholders meetings were held on September 10, 1970. The first authorized the issuance of 8,500 shares of E.A. Maryland preferred stock to C.R.C. in exchange for $850,000 in notes issued by E.A. Maryland and held by C.R.C.

Haynes v. James H. Carr, Inc., 427 F.2d 700, 703 (4th Cir.), cert. denied, 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970). First, the statute itself must be interpreted to determine if, in light of the facts in this case, service of process over the non-resident directors is authorized by the statute. This court is bound by authoritative interpretations of the Maryland Long Arm statute by the Court of Appeals of Maryland. Shealy v. Challenger Mfg. Co., 304 F.2d 102, 104 (4th Cir. 1962). Second, if service is within the bounds of the statute, this court must then determine whether said service violates the due process clause of the Constitution. In deciding the constitutional issue, this court must follow decisions of the Supreme Court, and where the Supreme Court has not spoken, the Fourth Circuit. Piracci v. New York City Employees' Retirement System, 321 F.Supp. 1067 (D.Md.1971).

■ Count II of the complaint alleges that the individual defendants breached their fiduciary duties in allowing E.A. Maryland to repay loans to C.R.C. which depleted E.A. Maryland's working capital and thereby lowered the value of the corporation generally and for the purposes of the merger valuation. Undenied are defendants' assertions that any such decisions, as to the merger or repayment of loans, were made in Pittsburgh, Pennsylvania and not in Baltimore, Maryland. The cause of action against the individual defendants does not arise from their transacting any business in this state, therefore, and as a result jurisdiction cannot be based on Article 75, section 96(a) (1).

■ Plaintiffs argue that section 96 (a) (3) provides a basis for *in personam* jurisdiction because certain acts of the corporate employees of E.A. Maryland and C.R.C. took place within the State of Maryland which implemented the decisions of the individual defendants relating to the repayment of the loans. These acts, say the plaintiffs, constitute acts of the individual defendants acting through agents in Maryland which caused

tortious injury in Maryland, thereby coming within the ambit of § 96(a) (3). The difficulty with this argument is that the tort with which the individual defendants are charged in Count II is the alleged breach of their fiduciary duty to E.A. Maryland through gross mismanagement. It is the action of the individual defendants themselves in formulating a policy for the corporation to follow which forms the basis of the tort alleged and not the action of the corporation in following that policy. The corporate employees who acted in Maryland were agents of the corporation and not agents of the individual directors under these circumstances. Therefore the individual defendants did not perform acts in Maryland giving rise to the cause of action and § 96(a) (3) does not provide a basis for jurisdiction over them.

■ If *in personam* jurisdiction exists at all over the individual defendants, it must be found under the authority of § 96(a) (4) of the Long Arm statute. This section authorizes jurisdiction over tortious causes of action causing injury anywhere by acts committed or omitted anywhere provided that the defendant has a sufficient nexus with Maryland to satisfy the terms of the statute.

The question then becomes one of determining whether the individual defendants have such a nexus wih Maryland. The statute sets up three alternative tests for this determination. First, does the defendant regularly do or solicit business in Maryland? Second, does the defendant engage " . . . in any *other* persistent course of conduct . . . " in Maryland? (Emphasis supplied). Third, does the defendant derive " . . . substantial revenue from goods, food, services or manufactured products used or consumed . . . " in Maryland?

In Lawson v. Baltimore Paint and Chemical Corporation, 298 F.Supp. 373 (D.Md.1969), Judge Thomsen found that sufficient Maryland nexus existed under the third test to sustain jurisdiction in accord with § 96(a) (4). *Lawson* was

also a stockholders derivative action in which several of the defendants were officers and/or directors of the corporation. The corporation had its principal office and plant in Maryland, but the directors meetings were held outside the state. The individual defendants in *Lawson* received thousands of dollars from the corporation and therefore received substantial revenues from services used in the State of Maryland. The plaintiffs here, however, do not dispute the defendants' affidavits which deny receipt of any payments from E.A. Maryland. Plaintiffs raised the argument here that the defendants were paid by M.S.A. for their duties as officers and/or directors of E.A. Maryland but have failed to show that the payments made, if any, by M.S.A. were charged back to either of the subsidiary Maryland corporations. There is then no evidence that the individual defendants in the instant case derived any, much less "substantial," revenue " . . . from goods, food, services or manufactured products used or consumed . . . " in Maryland.

The first and second tests for determining the existence of sufficient Maryland nexus under the statute will be considered together. There is no evidence that the individual defendants solicited any business by their own acts in Maryland either on their own behalf or on behalf of the corporations with which they were associated. They did perform, however, acts in Maryland. The individual defendant directors came into the State of Maryland each year, from 1965 to 1970, for the annual stockholders meetings and the annual board of directors meetings at both E.A. Maryland and C.R.C. The fact that Ryan missed the last annual meeting and the September 10, 1970 meetings is not decisive. The same is true for Carville's absence from the first two sets of annual meetings. Each year by attending the stockholder and directors meetings, the defendants had contacts with the State of Maryland and established in Maryland a continuing relationship with the corpora-

tions and their stockholders. These acts in this court's view are sufficient to show that they were engaging in a persistent course of conduct in this state even if they could not be said to be regularly doing business in Maryland. See *Novak v. National Hot Rod Assoc.*, 247 Md. 350, 357, 231 A.2d 22 (1967).

Since it has been found that the statutory tests of § 96(a) (4) of the Maryland Long Arm statute have been met to support *in personam* jurisdiction over the individual defendants, it remains to determine if such an application of the statute in this case offends "traditional notions of fair play and substantial justice" so as to be violative of due process. *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Haynes v. James H. Carr, Inc., supra.*

As a general rule the fact that a corporation is doing business in a state is not sufficient to establish *in personam* jurisdiction over the corporation's directors, officers, and agents. *Wilshire Oil Company of Texas v. Riffe*, 409 F.2d 1277 (10th Cir. 1969). *Unicon Management Corp. v. Koppers Company*, 250 F. Supp. 850 (S.D.N.Y.1966). In the instant case, however, the facts are such that due process of law will not be denied by having the directors defend this suit in the District of Maryland. Their annual ventures into Maryland to attend meetings established "certain minimum contacts with (the state) such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington, supra.* Of great importance to this court's findings in this case is the fact that the defendants are directors of a Maryland corporation and they are being sued in Maryland for an alleged breach of a fiduciary duty to that corporation and its stockholders. This circumstance militates against the application here of the general rule stated above, dealing with *in personam* jurisdiction over corporate directors. *Wilshire Oil Co., supra*, 409 F.2d at 1281–1282.

The fiduciary duty of these directors is established by the laws of Maryland. The directors came into the state once a year and held themselves out as the guardians of the interests of the Maryland corporation, E.A. Maryland, and of its stockholders.[4]

In the *Lawson* case, *supra*, 298 F.Supp. at 379, Judge Thomsen considered as important the problems faced by stockholders in maintaining a suit of this nature. In *Lawson* the defendant directors were from several different states and it would have been difficult for the plaintiffs to sue them all in any state but the corporation's home state. In the instant case the defendants are all from Pennsylvania, but that coincidence is not decisive. "Traditional notions of fair play and substantial justice" would seem to allow the stockholders of a corporation to sue the directors for breach of fiduciary duty in the home state of a corporation, at least as long as the directors regularly came into that state to meet with and to deal with the stockholders at annual meetings.

Because the defendants are directors of a Maryland corporation and their relationship with the corporation and its stockholders is established by Maryland law, the defendants have "purposely avail[ed themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

Therefore, for the reasons stated above, it is this 22nd day of March, 1972, by the United States District Court for the District of Maryland,

Ordered that the individual defendants' motions on jurisdictional grounds to dismiss, or in the alternative for summary judgment, must be, and are hereby, denied.

---

4. The record does not establish where the election of directors took place and this court will not speculate on that fact. If the directors were elected at the annual stockholders meeting held in Maryland, the directors would have another important contact with this state.